Beard, &c., v. City of Hopkinsville, &c.

---

*CASE 41—PETITION EQUITY—JANUARY 23.

# Beard, &c., v. City of Hopkinsville, &c.

### APPEAL FROM CHRISTIAN CIRCUIT COURT.

1. CONSTITUTIONAL LAW—LIMITATION UPON INDEBTEDNESS OF TOWNS AND CITIES.—Section 158 of the new Constitution, limiting the indebtedness of towns and cities, became operative immediately upon the adoption of the Constitution, the maximum limit of the indebtedness of a particular town or city being determined by the class to which cities of its population were required by the Constitution to be assigned, although the classification had not then been made by the General Assembly.

2. SAME.—The prohibition of that section is against incurring a legal liability to pay in any manner or for any purpose, when a given amount of indebtedness has previously been incurred, and therefore a debt payable upon the happening of some event, such as the rendering of service or the delivery of property, is within the prohibition. And it can make no difference whether the debt be for necessary current expenses or for something else.    Nor does the fact that the liability is within the limits of the revenue accruing to meet it prevent the prohibition from applying.

   At the time of the adoption of the present Constitution the City of Hopkinsville, which had a population of more than three thousand and less than eight thousand, and therefore belonged in the fourth class, had an indebtedness in excess of the limit provided for cities of that class.    Thereafter, but before the classification of the towns and cities by the Legislature, the city made a contract for the construction and maintenance of a system of water-works and of an electric light plant, by the terms of which the city was to pay for the use of a certain number of hydrants and a certain number of arc lights for five years the sum of $5,500 per year as rent, and at the expiration of five years the contract for water rental was to continue fifteen years longer at $4,500 per year, the city having an option to renew the contract for

---

* A note as to what constitutes an "indebtedness" within the meaning of constitutional and statutory restrictions of indebtedness of municipal corporations, is published with this case in 23 L. R. A., 402.

Beard, &c., v. City of Hopkinsville, &c.

lights at $1,000 per year. The annual rentals were to be met out of the annual revenues without exceeding the tax rate of seventy-five cents. *Held*—That by the contract the city incurred an "indebtedness" within the prohibition of section 158 of the Constitution, and therefore the contract is void.

J. I. LANDES, PETREE & DOWNER, C. H. BUSH, JOE McCARROL, E. P. CAMPBELL AND J. T. HANBERRY FOR APPELLANTS.

1. The limitation in the charter of the City of Hopkinsville on the power of the city and its authorities to create indebtedness was unrepealed and in full force at the date of the contract in question here. (Acts 1869–70, vol. 2, pp. 96, 106; Acts 1879, vol. 2, p. 970.)

2. Section 157 of the new Constitution was self-executing and in force at the date of the contract. (New Const., sec. 166; Cooley's Const. Limit., 6th ed., p. 99; Law v. People, 87 Ill., 385; City of Springfield v. Edwards, 84 Ill., 626; St. Louis v. People, 124 Ill., 655; Bass v. Nashville, Meigs, 421; Kine v. Defenbaugh, 64 Ill., 291; Mitchell v. Illinois, &c., Co., 68 Ill., 286; Willis v. Mahon, 48 Minn., 140; People *ex rel* McRoberts, 62 Ill., 38, 41; Johnson v. Parkersburg, 16 W. Va., 402.)

3. Under the contract for water and electric lights between John P. Martin and the City of Hopkinsville, the aggregate amount ($95,000) which the city agreed to pay for the period of twenty years for water and light, although it is to be paid in fixed annual or quarter-annual sums, is a debt for the aggregate sum, from the date of the contract, of the character that is prohibited and declared void by the charter of March 5, 1870, and section 157 of the new Constitution. (Niles' Water-works v. Niles, 59 Mich., 311; Coulson v. City of Portland, Deady's Rep., 481; 91 Pa., 398; French v. City of Burlington, 42 Iowa, 614; Burlington Water Co. v. Woodward, 49 Iowa, 58; Springfield v. Edwards, 84 Ill., 626; Fuller v. Chicago, 89 Ill, 282; Prince v. Quincy, 105 Ill., 138; People v. May, 9 Col., 80; Davenport v. Kleinschmidt, 6 Mont., 502; s. c., 16 Am. and Eng. Corp. Cases, 301; Culbertson v. Fulton, 127 Ill., 30.)

4. The contract with John P. Martin is void so far as it undertakes that the City of Hopkinsville shall pay for water and light an amount in excess of the price specified in the contract equal to the city taxes and assessments on the plant from year to year, because that would in effect be exempting the plant from taxes in direct opposition to section 3 of Bill of Rights.

WOOD & BELL AND JAMES BREATHITT FOR APPELLEES.

1. Under the charter existing at the time of the adoption of the Constitution, the city had power to make the contract in question here. (Acts 1869–70, vol. 2, p. 96; Acts 1884, vol. 1, p. 395.)

2. This charter was in no way affected by the adoption of the Constitu-

tion, but remained as it was until the Legislature should, by appropriate action, pass a general law for the government of cities of the fourth class. (New Const., secs. 156, 157, 158, 166, 167; Holzhauer v. City of Newport, 94 Ky.)

3. The provisions of our Constitution should be given the same construction given by the States from which they are borrowed. (Cooley's Const. Limit., 15th ed., sec. 64; Fall v. Hazlerigg, 45 Ind., 576; s. c., 15 Am. Rep., 278; Langdon v. Applegate, 5 Ind., 323; Clark v. Jeffersonville R. Co., 44 Ind., 248; s. c., 21 Am. Dec., 387; 35 Am. Dec., 223.)

4. The current revenues of the city were ample to meet the quarterly payments and other expenses, and therefore no debt within the constitutional inhibition was created. (Grant v. City of Davenport, 36 Iowa, 396; Dively v. City of Cedar Falls, 27 Iowa, 227; City of Valparaiso v. Gardner, 97 Ind., 1; s. c., 49 Am. Rep., 417; Quill v. City of Indianapolis, 7 Lawyers' Rep. Ann., 681; Crowder v. Town of Sullivan, 13 Lawyers' Rep. Ann., 647; East St. Louis v. East St. Louis G. L., C. & C. Co., 98 Ill., 415.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

On June 13, 1892, the appellee, through its Board of Councilmen, entered into a contract with its co-appellee, John P. Martin, by the terms of which the latter agreed to construct and maintain, in and near the city, a system of water-works and sewerage and also an electric light plant. For the use of seventy hydrants for five years and of thirty-five arc lights for the same period, the city agreed to pay Martin as rent the sum of $5,500 per year. At the expiration of the five years the contract for water rental was to continue fifteen years longer at $4,500 per year, the city having an option to renew the contract for lights at $1,000 per annum.

The city contained a population of more than three thousand and less than eight thousand, and therefore would be a city of the fourth class whenever the assignment and classification should be made of the cities and towns of the State as required by the Constitution. This assignment or classification had not been made at the

date of the contract or institution of this action. The indebtedness of the city was something like $125,000, due mainly in five-thirty bonds, to the Ohio Valley Railway Company. The value of the taxable property for 1891 was $1,546,380. It is shown that, with a tax rate of seventy-five cents on the hundred dollars, together with the usual collections from other fixed sources, the city could pay its annual current expenses of all kinds, and also the additional water and light rental proposed in the contract, and still have an annual surplus of several thousand dollars.

Immediately after this contract was made, the appellants, who are citizens and taxpayers of the city, instituted this action to have the contract declared void, contending that the City of Hopkinsville—or its Board of Councilmen—had no constitutional power to make the contract, because it bound the city to pay an indebtedness shown to be in excess of the limitations imposed on the city and its authorities by the Constitution. There were other contentions which are not necessary to notice.

The chancellor determined all the points made against the plaintiffs below, upheld the contract and dismissed the petition. This appeal involves the correctness of that judgment.

The constitutional provision supposed to affect the question involved is as follows:

"Sec. 158. The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the

assessment next before the last assessment previous to the incurring of the indebtedness, viz.: . . . cities and towns of the fourth class, five per centum: . . . *Provided,* Any city, town, etc., may contract an indebtedness in excess of such limitations when the same has been authorized under laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this Constitution. . . .

"Sec. 166. All acts of incorporation of cities and towns heretofore granted, and all amendments thereto, except as provided in section one hundred and sixty-seven, shall continue in force under this Constitution, and all city and police courts established in any city or town shall remain, with their present powers and jurisdictions, until such time as the General Assembly shall provide by general laws for the government of towns and cities and the officers and courts thereof, but not longer than four years from and after the first day of January, one thousand eight hundred and ninety-one, within which time the General Assembly shall provide by general laws for the government of towns and cities, and the officers and courts thereof, as provided in this Constitution."

By their contention, the appellants mean that the indebtedness of the city, at the time of the contract, was in excess of five per centum on its taxable property, which is the limit prescribed by the 158th section of the Constitution for cities of the fourth class, and Hopkinsville is alleged to be a city of the fourth class by reason of its population being three thousand or more and less than eight thousand.

In order to apply this limit of five per centum counsel for the appellants plead, as a fact, that the population of the city was such as required its assignment and classification among cities of the fourth class. It is not contended, as we understand the argument, that the actual assignment—the mere form of classification—directed by the Constitution to be made by the General Assembly, can be made by the courts, but that it was the evident intention of the framers of the Constitution to have the wholesome limitations provided for in the section to apply instantly upon its adoption; that the assignment or classification was a mere form, and its delay should not entitle the cities desiring to do so, to overreach the plain provisions of the Constitution and deliberately incur an unauthorized indebtedness.

Notwithstanding the fact that some difficulty may seemingly arise in ascertaining what maximum percentage on the value of the taxable property in a given city is to be applied in determining what limitation on the indebtedness shall control in the absence of the classification, yet we are constrained to the conclusion that not to apply the section as one affecting and controlling the cities of the Commonwealth immediately upon the adoption of the Constitution, would be in clear defiance of the determined will of the body framing the instrument.

No one idea stands out more clearly than that barriers should be erected against the creation of municipal indebtedness. In times of popular excitement, the internal improvement craze had well nigh wrecked many of the most flourishing counties and towns of the hitherto staid and conservative Commonwealth. To seek excuses

for withholding the application of these conservative restraints, thus wisely devised by this body of enlightened men, and delay the beneficent results intended, merely because a formal assignment of a given city had not been made to its appropriate class, would be giving prominence to the shadow and losing sight of the substance. Moreover, it will be observed, that the percentages are not fixed wholly with reference to the classes to which the cities may belong, but the per centum fixed for some of the cities is made to depend on their population, and recourse must therefore be had, in such cases, to the ordinary methods of proof to ascertain the *per centum* applicable.

In discussing a similar question, it was said in Law v. The People, 87 Ill., 385 : "It has been repeatedly held, and is regarded as settled doctrine, that all negative or prohibitive clauses of this character found in a Constitution execute themselves; as legislative provisions in the same or other language, prohibiting the incurring of such indebtedness, could be no more binding or forcible than the Constitution itself."

In the case of Holzhauer v. City of Newport, 94 Ky., 396, it was contended that because the indebtedness of the city at the time of the adoption of the present Constitution, and at the time the contracts in question were entered into, was in excess of ten per centum on the valuation of her taxable property during that time, therefore the prohibitory provisions of section 158 were applicable. And we said of this contention : "It may be admitted that to the extent that this section provides for a state of case in existence at the time of the adoption of the Constitution, it is applicable to all towns and cities

resting under the conditions named; but, in express terms, the limitation of ten per centum may be exceeded when the proposed indebtedness 'has been authorized under laws in force prior to the adoption of this Constitution.'"

This section was therefore treated as in full force upon the adoption of the Constitution, and as applicable to the cities and towns resting under the conditions named. The contract for the increased indebtedness of the city (Newport) was upheld upon the ground that it was contracted "under laws in force prior to the adoption of the Constitution"; those laws being in the form of amendments to the charter of the city, approved in 1890, authorizing the issual of bonds for specific purposes, to be paid by taxes levied within certain specified districts created by the acts in question. These amendments to the organic law of the city were held to be continued in force, in express terms, under the provisions of section 166 of the Constitution.

Construing the section (158) as operative immediately upon the adoption of the Constitution, the question, is, does the contract under consideration "authorize an indebtedness," on the part of the City of Hopkinsville, "to an amount, including existing indebtedness, in the aggregate, exceeding" five per centum on the taxable property of the city? The question is wholly new to the law of our State; but the Constitutions of a number of the other States contain provisions similar to the one under consideration, and the answers given by the various courts to the question indicated are by no means harmonious.

It is to be remembered that the annual rentals are to

be met out of the annual revenues without any increase of the tax rate of seventy-five cents on the one hundred dollars of taxable property, and that as the contractor, Martin, furnishes the water and light, and thus earns the money he is paid therefor, the appellees, therefore, contend that the liability is thus extinguished as soon as it comes into existence. They contend that "when liabilities are created and appropriations are made which are within the limits of the revenue accruing to meet them, they are not debts within the meaning of the prohibition of the Constitution." The cases relied on by them sustain their contention that revenues may be disposed of in advance of their receipt—hypothecated as it were—as if already in the treasury, and when such an appropriation will meet and discharge the obligation, which is but a contingent one, no indebtedness is created in the meaning of the Constitution.

We suppose, however, that if the words used in the Constitution are to be given their usual and commonly accepted meaning by the contract in question, the city does "incur an indebtedness" in the sense these terms are used in the Constitution; and that this indebtedness is in excess of the limitation imposed is apparent. Turning to some of the decisions in States with constitutional provisions similar to ours, we find the Illinois Supreme Court, in City of Springfield v. Edwards, 84 Ill., 626, thus discussing the question:

"It is provided by section 12, article 9, of the present Constitution, that 'no county, city, township, school district or other municipal corporation shall be allowed to become indebted, in any manner or for any purpose, to an amount, including existing indebtedness, in the aggre-

gate, exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment, etc.' . . . The prohibition is against becoming indebted—that is, voluntarily incurring a legal liability to pay, in any manner or for any purpose, when a given amount of indebtedness has previously been incurred. It could hardly be probable that any two individuals of average intelligence could understand this language differently. It is clear and precise, and there is no reason to believe that the convention did not intend what the words convey. A debt, payable in the future, is obviously no less a debt than if payable presently; and a debt payable upon a contingency, or upon the happening of some event, such as the rendering of service or the delivery of property, etc., is some kind of a debt, and therefore within the prohibition. 'If a contract or undertaking contemplates, in any contingency, a liability to pay when the contingency occurs, the liability is absolute—the debt exists—and it differs from a present unqualified promise to pay only in the manner by which the indebtedness was incurred. And since the purpose of the debt is expressly excluded from consideration, it can make no difference whether the debt be for necessary current expenses or for something else.' "

In Culbertson v. City of Fulton, &c., 127 Ill., 30, in discussing a contract for constructing a system of waterworks to be paid for in the future, the court said: "By entering into the contract of August 15, 1887, the city 'became indebted.' The obligation entered into by the terms of the contract constituted such an indebtedness as is contemplated by the language of the Constitution. It can not be said that the indebtedness did not come into

being until the work was completed and occupied by the city. The city bound itself to pay for the work when it should be completed, and could be compelled to do so if the work should be done according to contract." And the case of City of Springfield v. Edwards, *supra*, is referred to and approved. To the same effect are the cases in the same court of Law v. People, 87 Ill., 385; Prince v. City of Quincy, 105 Ill., 138.

In the case of Sackett v. City of New Albany, 88 Ind., 473, it was held that when the Constitution forbids a municipal corporation ever to become indebted beyond a certain amount, that sum may not be exceeded even for necessary expenses. The contract was for the erection of fire-alarm strikers and signal boxes at the price of $3,325, when the limit imposed by the Constitution had already been exceeded. The language of the Constitution was similar to ours, and the court, by Chief Justice Niblack, after reviewing the decisions of the courts of Illinois and Iowa, said: "By 'indebtedness,' in this connection, we mean an agreement of some kind by the city to pay money when no suitable provision has been made for the prompt discharge of the obligation imposed by the agreement. It was obviously the intention of the Legislature in submitting, and of the people in adopting, the thirteenth article of the Constitution, to arbitrarily restrict the power of municipal corporations to contract debts to a limited per centum of the taxable property, and to require, when that limit of indebtedness has been reached, that such corporations shall be prepared to pay for whatever of value they may obtain without the incurrence of any further indebtedness for any purpose whatever."

That there are cases in all these States upholding contracts similar to the one now under consideration must be admitted, and that the two classes of cases are not easily, if at all, reconcilable, is evident.

We have adopted the view in accord with the spirit of the Constitution, as we understand it, and as we think, also, in accord with better reason. Any other doctrine opens the door to all the mischiefs intended to be inhibited by the Constitution.

A fair illustration of the doctrine contended for by the appellees is given in the case of Dively v. City of Cedar Falls, 27 Iowa, 232, relied on by them, where it is held that "If A should undertake to build a court-house within three years, doing so much and to be paid accordingly each year, the obligation of the contract would arise when executed, but the *indebtedness* under the Constitution (if there were none other) would be measured by that to be paid each year."

It seems to us that such a construction of the Constitution would render the limitations in question wholly nugatory. It is needless to notice any other of the alleged reasons urged against upholding the contract, as the views here announced are fatal to its validity.

The judgment is reversed, with instructions to proceed according to the principles announced in this opinion.