**EATON v. MIMNAUGH.**

[73 Pac. 754.]

43   465
d46   82
d46   84
f46   229

COUNTIES — CONSTITUTIONAL PROHIBITION AGAINST INDEBTEDNESS.

1. A debt incurred for the construction of a courthouse is one voluntarily incurred, within the prohibition of Const. Or. Art. XI, § 10, providing that no county shall create any debts or liabilities exceeding $5,000, except for certain purposes. This section does not prohibit the creation of debts in the performance of some imperative public duty, but providing a courthouse is not such, for it may be postponed in the discretion of the county authorities.

COUNTY INDEBTEDNESS—CONFLICT BETWEEN CONSTITUTION AND STATUTE.

2. A legislative direction to violate a constitutional prohibition is void. For instance, the act of the legislature directing that an election be held to select a county seat of Union County, and, in case of the selection of another than the present place, that the county officers provide $45,000 by an issue of warrants for the construction of a new courthouse (Laws 1903, p. 104), is void, the county being already in debt beyond the limit permitted by the state constitution: *Simon v. Northup*, 27 Or. 487, distinguished.

STATUTE — CREATION OF COUNTY INDEBTEDNESS.

3. An act requiring an election to be held for the selection of a county seat, and directing the county clerk to issue warrants to pay the cost of constructing a new courthouse, if a new location shall be selected, and to levy a tax each year for five years to pay off such warrants, does not limit the liability on such warrants to the proceeds of the levy (Laws 1903, p. 104), nor is it a legislative creation of a legal liability which must be recognized, like the expense of holding the sessions of the courts, or the payment of statutory salaries, but is a direction to the county officials to create a county debt for a purpose other than to suppress insurrection or repel invasion, within the prohibition of Const. Or. Art. XI, § 10.

From Union: ALFRED F. SEARS, JR., Judge.

43 Or.—30

Suit by A. E. Eaton and others against J. H. Mimnaugh, County Clerk of Union County, to restrain the latter from giving notice of a special election for the relocation of the county seat of Union County, and incurring the necessary expense incident thereto. A demurrer to the complaint was sustained, and from the resulting decree plaintiffs appeal.                                        REVERSED.

For appellants there was a brief over the names of *Crawford & Crawford* and *C. E. Cochran*, with an oral argument by *Mr. Thos. H. Crawford* and *Mr. Cochran.*

For respondent there was a brief over the names of *Samuel White*, District Attorney, *Chas. H. Finn*, and *William W. Cotton*, with an oral argument by *Mr. Finn* and *Mr. Cotton.*

MR. JUSTICE BEAN delivered the opinion.

This suit involves the constitutionality of an act of the legislature of 1903 for the relocation of the county seat of Union County (Laws 1903, p. 104), declaring that a special election shall be held on the first Monday in November, 1903, for the purpose stated, defining the duties of the county clerk in connection with such election, and prescribing the qualifications of voters thereat, and the manner of conducting the same. It is also provided that no place shall be voted for except the cities of Union and La Grande; that, if La Grande shall receive 55 per cent of all the votes cast, it shall be the county seat of the county from and after the 1st day of January, 1905, otherwise the county seat shall remain at Union, its present location; that in the event La Grande shall receive the requisite number of votes, and be selected as the county seat, the county court shall, within sixty days after the election, acquire in La Grande, by purchase or otherwise, a suitable site for a courthouse, and within ninety days adopt plans and specifications for such a building, to be constructed of brick,

wood, and iron, with the necessary fireproof vaults for the county records; that as soon as convenient after the adoption of the plans and specifications the county court shall let a contract to the lowest responsible bidder for the construction of the building, to cost the county, together with the site, not to exceed $45,000, and to be completed and ready for occupancy by January 1, 1905, at which time the county records and offices shall be moved from the courthouse at Union to the new courthouse at La Grande; that in payment for the proposed courthouse the county clerk shall issue warrants on bills duly audited and approved by the county court on the "courthouse fund"; that the county court shall levy a tax on all the taxable property within the county "each year for five years sufficient to raise a fund that will pay at least one fifth of said warrants, principal and interest, each year, so that the whole thereof shall be paid at the end of five years"; that if for any reason the contemplated courthouse shall not be completed and ready for occupancy by January 1, 1905, it shall be the duty of the county court, in case of a change in the county seat, to provide suitable offices and quarters at La Grande for the county officers and courts until the courthouse is completed and ready for occupancy.

The plaintiffs, who are residents and taxpayers of the county, bring this suit to restrain the clerk from giving notice of and providing necessary supplies for such special election, or incurring any expenses on account thereof, on the ground that the county is indebted in the sum of $200,000, contracted since the constitution took effect, evidenced by outstanding warrants, more than $5,000 of which was voluntarily incurred, and it is therefore incapable of complying with the provisions of the act in question in case the county seat should be changed from Union to La Grande, because of the constitutional provision that "no county shall create any debts or liabilities which shall

singly or in the aggregate exceed the sum of $5,000, except to suppress insurrection or repel invasion": Const. Or. Art. XI, § 10. The plaintiffs insist that the act is entire, and that, if the portion thereof making it the duty of the county court to construct a courthouse at La Grande in the event of the location of the county seat at that city is void, because in violation of the constitution, the entire act must fail. This position is not questioned by counsel for defendant, and we shall assume it to be sound. The argument in support of the constitutionality and validity of the statute under consideration, as we understand it, is: (1) The provision of the constitution directed against the creation of debts by a county, invoked by plaintiffs, has no application to a debt incurred for the construction of a courthouse, because it is an obligation which a county is compelled to assume as a governmental agent; (2) the constitutional limitation applies to counties only, and does not prohibit the legislature from imposing liabilities upon them to any extent or for any legitimate purpose, or from compelling them to create such liabilities; (3) the act in question does not contemplate the creation of any debt against the county.

The constitutions of most of the western states contain provisions restricting within certain limits the right of a county to incur indebtedness, and wherever they have been brought in question the general tendency of the courts has been to give them force and effect, and to construe them so as to protect the taxpayers against the unauthorized expenditures. In many of the states the provisions are that no county "shall be allowed to become indebted," or "shall become indebted," exceeding a certain amount, or "shall be authorized or permitted to become indebted" beyond a certain sum, or that "the aggregate debts for all purposes" shall not exceed a certain amount. In all such states the decisions are uniform in holding that any liability, not

arising from a tort, by virtue of which the county is under obligation to pay money, is within the prohibition of the constitution, and void if in violation thereof, without regard to the purpose for which it may have been incurred or contracted. A distinction was at one time made by the Supreme Court of Missouri between debts voluntarily incurred by a county, such as for the improvement of the courthouse, and those the law required it to incur, as for the board of prisoners; holding the former void (*Book* v. *Earl*, 87 Mo. 246), and the latter valid: *Potter* v. *Douglas County*, 87 Mo. 239. But the attempted distinction was subsequently repudiated, and the doctrine broadly announced that the provisions of the constitution of that state prohibiting a county from incurring indebtedness "exceeding in any year the income and revenue provided for such year" included all indebtedness for any purpose: *Barnard* v. *Knox County*, 105 Mo. 382 (16 S. W. 917, 13 L. R. A. 244).

The Constitution of Colorado provides that the aggregate debts of any county, for all purposes, exclusive of debts contracted before the adoption of the constitution, shall not at any time exceed a certain per cent of the assessed values, unless the taxpayers vote in favor of such excess at some general election. One of the counties of the state issued warrants in excess of the constitutional limit for the ordinary expenses of the county, such as witness and juror fees, election costs, charges for board of prisoners, county treasurer's commission, etc., and afterward refused to pay them. In an action brought in the federal courts on the warrants it was insisted that they were not within the provisions of the constitution, because issued in payment of involuntary or compulsory obligations of the county, which it could not avoid. The difficulty, if not impossibility, of maintaining county organizations under any other construction of the constitution,

was especially urged, and seems to have been persuasive in the court of primary jurisdiction. Upon appeal, however, the Supreme Court of the United States held the warrants absolutely void, on the ground that the language of the constitution plainly included all indebtedness of whatsoever kind and for whatever purpose it may have been incurred, and the hardship imposed on individuals or the county afforded no excuse for the violation of its provisions; that there was no difference between indebtedness incurred by the contract of the county and that arising from what may be called "compulsory obligations." " Neither can we assent to the position of the court below," says Mr. Justice Lamar, "that there is, as to this case, a difference between indebtedness incurred by contracts of the county and that form of debt denominated 'compulsory obligations.' The compulsion was imposed by the legislature of the state, even if it can be said correctly that the compulsion was to incur debt; and the legislature could no more impose it than the county could voluntarily assume it, as against the disability of a constitutional prohibition. Nor does the fact that the constitution provided for certain county officers, and authorized the legislature to fix their compensation and that of other officials, affect the question. There is no necessary inability to give both of the provisions their exact and literal fulfillment": *Lake County* v. *Rollins*, 130 U. S. 662 (9 Supt. Ct. 651).

Such are also the decisions under similar constitutional provisions of the courts of Illinois (*City of Springfield* v. *Edwards*, 84 Ill. 626; *City of Bloomington* v. *Perdue*, 99 Ill. 329; *Culbertson* v. *City of Fulton*, 127 Ill. 30, 18 N. E. 781); Indiana (*Sackett* v. *City of New Albany*, 88 Ind. 473, 45 Am. Rep. 467; *City of Laporte* v. *Gamewell Fire Alarm Tel. Co.* 146 Ind. 466, 45 N. E. 588, 35 L. R. A. 686, 58 Am. St. Rep. 359); Kentucky (*Beard* v. *City of Hopkinsville*, 95 Ky. 239, 24 S. W. 872, 23 L. R. A. 402, 44 Am. St. Rep. 222); Wyo-

ming (*Grand Island & N. W. R. Co.* v. *Baker*, 6 Wyo. 369, 45 Pac. 494, 34 L. R. A. 835, 71 Am. St. Rep. 926); Iowa (*Windsor* v. *City of Des Moines*, 110 Iowa, 175, 81 N. W. 476, 80 Am. St. Rep. 280); Montana (*State* v. *City of Helena*, 24 Mont. 521, 63 Pac. 99, 55 L. R. A. 336, 81 Am. St. Rep. 453); Pennsylvania (*Keller* v. *Scranton*, 200 Pa. St. 130, 49 Atl. 781, 86 Am. St. Rep. 708); and Colorado : *People* v. *May*, 9 Colo. 80 (10 Pac. 641). The constitution of this state differs in language (although it is doubtful whether it does in substance) from that of the states referred to, and it may, therefore, be said that the authorities cited are not in point. They are illustrative, however, of the disposition of the courts not to extend the terms of the constitution by construction beyond its evident and plain meaning. In this view they afford material aid in construing our constitution, and are alluded to for that purpose.

The constitution of this state, as well as those of California and Washington, does not provide, as in many other states, that a county shall not "be allowed or permitted to become indebted" beyond a certain sum, but simply prohibits it from "creating" such an indebtedness. It has, therefore, been construed not to apply to involuntary indebtedness thrust upon the county by operation of law, such as fees of witnesses and jurors, salaries of officers, expenses of election, costs of conducting courts, and such other outlays as the law imposes upon the county, and which it is powerless to prevent or postpone : *Grant County* v. *Lake County*, 17 Or. 453 (21 Pac. 447); *Burnett* v. *Markley*, 23 Or. 436 (31 Pac. 1050); *Municipal Security Co.* v. *Baker County*, 33 Or. 338 (54 Pac. 174); *Lewis* v. *Widber*, 99 Cal. 412 (33 Pac. 1128); *Rauch* v. *Chapman*, 16 Wash. 568 (48 Pac. 253, 36 L. R. A. 407, 58 Am. St. Rep. 52); *Gladwin* v. *Ames*, 30 Wash. 608 (71 Pac. 189). It does, however, apply to debts incurred for the construction of county bridges, building of courthouses and jails, putting shelves in county

vaults, and the like, because voluntarily incurred: *Worm-ington* v. *Pierce,* 22 Or. 606 (30 Pac. 450); *Dorothy* v. *Pierce,* 27 Or. 373 (41 Pac. 668); *Municipal Security Co.* v. *Baker County,* 33 Or. 338 (54 Pac. 174). The county is for many purposes a mere governmental agency, charged with the performance of certain governmental duties, from the discharge of which it cannot escape, and any reasonable expense incurred by it in their performance may very properly be held as not within the prohibition of the constitution; but any obligation voluntarily assumed by it, if in excess of the constitutional limit, is void. It is difficult, if not impossible, to lay down any general rule whereby so to classify such obligations. Each case must be determined largely from its own facts, and by the doctrine of inclusion and exclusion. It manifestly cannot be held that all liabilities arising from the mere discharge of some public duty by a county, or in the performance of some powers conferred upon it by law, are involuntary obligations, and therefore not an indebtedness within the meaning of the constitution. A large part of the obligations incurred by every county may without any great impropriety be said to be involuntary, in the sense that the discharge of the duty in which they were incurred could not have been neglected or avoided without disregarding some provision of law; but, if that test alone is to be the standard, a county is practically left free to contract unlimited obligations, notwithstanding the provisions of the constitution. This would be violating the language of that instrument, and frittering away its meaning by construction.

1. In *Municipal Security Co.* v. *Baker County,* 33 Or. 338 (54 Pac. 174), Mr. Justice Wolverton, in referring to this question, says: "The expense incident to and necessary under the laws prescribed by the state to organize and maintain such a government [county] may be said to be thrust upon it by law but such as the county court, acting

in its capacity as fiscal agent of the county, has volition to contract, or such as may be wholly within its discretion to impose upon the county or not, as its judgment may dictate, is that against which the constitutional inhibition is directed." Generally speaking, it may be said that a liability imposed upon a county by law, which it is not at liberty to evade or postpone, is involuntary, and not within the terms of the constitution. But a liability arising from the performance of some public duty of a discretionary character, or which the county authorities may, in their discretion, postpone indefinitely or temporarily until means are provided for the payment of the expenses incident thereto, cannot be so held. In no event, and under no possible construction of the constitution, does it seem that a debt incurred by a county for the building of a new courthouse can be said to be involuntarily incurred. It is the duty of a county to provide offices for its officers, and rooms and accommodations for holding its courts, jails for the confinement of prisoners, and the like. It is assumed, however, that this will be done within the current revenue. The county has authority to levy taxes annually upon all the taxable property within its limits, with which to raise revenue sufficient to pay its expenses (B. & C. Comp. § 3085); and the law and the constitution contemplate that it will exercise its powers in that respect. If, however, from some cause which could not reasonably have been foreseen or anticipated at the time of the annual levy, it is without sufficient accommodations for the purposes indicated, or means to provide the same, a reasonable indebtedness, temporarily incurred for that purpose, having due regard to the financial condition of the county and its taxable property, might probably be said to be involuntary. When, however, it is already provided with ample accommodations, the provisions of the constitution cannot be avoided by a mere change of the county seat. We are

clear, therefore, that under the constitution and facts of this case Union County cannot legally create an indebtedness for the building of a new courthouse.

2. Nor do we think the legislature has authority to compel it to do so. The argument is that the constitution prohibits the county, but not the legislature, from creating the debt ; that, while a county cannot of itself create any debt in excess of the constitutional limit, the legislature may create a liability for any legitimate governmental purpose, and impose its payment upon the county, regardless of the constitution. The consequences of such a doctrine, and the facility it would afford for evading the wholesome provisions of the constitution, are such as to cause a court to weigh well the arguments in its favor, and to hesitate long before adopting it. Under such a construction, the constitution would afford but little protection to taxpayers. To rid itself of the undesirable restraint, it would only be necessary for the county to secure the enactment of a law imposing debts upon it for the construction of expensive jails, courthouses, highways, or other public improvements, regardless of its financial condition or the wishes of its people ; or, if the county authorities were unwilling to incur such indebtedness, designing persons might secure such legislation. But, even if such doctrine be accepted as sound, it could not avail the defendant, for by the act under consideration the legislature did not create a liability which it required the county to discharge. It directed and commanded the county to create the indebtedness, and this it had no authority to do. The constitution says that no county shall create any debt in excess of a certain sum, and the constitution, of course, must be obeyed in preference to a statute which says it shall do so : *Buchanan* v. *Litchfield*, 102 U. S. 278 ; *Cook County* v. *Chicago Indus. School*, 18 N. E. 183 (1 L. R. A. 437, 8 Am. St. Rep. 386); *McRae* v. *County of Cochise* (Ariz.), 44 Pac. 299. The situa-

tion, as we view it, is this : Union County is now indebted beyond the constitutional limit. The constitution says that any additional indebtedness voluntarily incurred by it shall be invalid, and of no effect. The legislature requires it, in a certain event, to incur such an additional indebtedness, not to exceed $45,000, payable within five years. The question is, which shall prevail, the constitution or the legislature ? Clearly, the constitution. *Simon* v. *Northup*, 27 Or. 487 (40 Pac. 560, 30 L. R. A. 171,) has no bearing on this discussion. The law compelling the County of Multnomah to take over, supervise, and control the free bridges did not require the county to contract an indebtedness therefor. It contemplated, and so provided, that the expenses incident to the management and control of the bridges should be raised by annual taxation, as other expenses of the county.

3. It is contended, however, that the statute under discussion does not provide for the creation of a debt by the ·county, because it requires the county court to levy a tax annually for five years for the payment thereof. This position is untenable. The legislature directs and requires the county to issue its warrants in payment of the proposed courthouse and site, without limiting the payment of such warrants to any special fund or to the money raised by the special tax. "As a general rule," says this court, in *Avery* v. *Job*, 25 Or. 512, 520 (36 Pac. 293, 294), "when the legislature authorizes a municipality to contract a debt, and issue bonds therefor, it is to be inferred that it intended to authorize the payment of such bonds out of the money raised by general taxation, unless there is something in the act itself, or some general limitation upon the power of taxation, which repels such an inference ; and, although a special tax or fund may be provided, the bondholders' remedy is not limited to such tax or fund, unless it is provided that the bonds shall not be paid in any other way.

The bonds, when issued, become a debt of the corporation, for which it is primarily liable, and for any balance due thereon after the application of the special fund the holders are entitled to payment out of the general fund of the corporation." In *United States* v. *County of Clark*, 96 U. S. 211, a county subscribed for stock of a railroad company, and issued its bonds in payment thereof, pursuant to a law which authorized the levy of a special tax to pay them, but which contained no provision declaring that the fund derived from such tax only should be so applied. It was held that the bonds were debts of the county as fully as any other liability, the special tax being merely an additional provision for their payment; and that for any balance remaining due, either principal or interest, after the application of the proceeds of the special tax, the holders were entitled to payment out of the general fund of the county. To the same effect is *Lowell* v. *Boston*, 111 Mass. 454 (15 Am. Rep. 39).

There are decisions holding that where, at the time a contract is made by a county, a fund is on hand and appropriated to its payment, or where one has been provided for, although not yet collected, or where an appropriation has been made of anticipated revenues, and the contract is payable out of such fund or revenue, it does not create an indebtedness within the meaning of the constitution: *Law* v. *People*, 87 Ill. 385; *Koppikus* v. *State Capitol Com'rs*, 16 Cal. 248; *People* v. *Pacheco*, 27 Cal. 175; *People* v. *May*, 9 Colo. 404 (12 Pac. 838); *Swanson* v. *City of Ottumwa*, 118 Iowa, 161 (91 N. W. 1048, 59 L. R. A. 620); *Beard* v. *City of Hopkinsville*, 95 Ky. 239 (24 S. W. 872, 23 L. R. A. 402, 44 Am. St. Rep. 222, 237, note). But where, as here, no such provision is made, and a liability is incurred payable in the future, it is obviously no less a debt because the municipality is required by special law thereafter to levy a tax for its payment when it becomes due than if no such

provision was made. The principal revenue of a county or other municipality is derived from taxation, and all debts legally contracted by it are payable from such revenue unless otherwise expressly stipulated. The duty to levy a tax in the future for the payment of an obligation due or to become due necessarily implies the existence of a debt against the corporation, which the creditor is lawfully entitled to have paid by the proceeds of the levy. The provision, therefore, requiring the county court to levy the special tax each year for five years, for the payment of the warrants to be issued on account of the construction of the proposed courthouse, is merely an additional means provided for their payment, and does not render them any the less the debt or obligation of the county, or take such indebtedness out of the prohibition of the constitution: *City of Ottumwa* v. *City Water Supply Co.* 119 Fed. 315 (56 C. C. A. 219, 59 L. R. A. 604, note).

We are therefore constrained to hold, for the reasons given, that the act under consideration is unconstitutional and void, in that it undertakes to compel and require the County of Union to create an indebtedness in violation of the constitution. The decree of the court below is therefore reversed, and one will be entered here as prayed for in the complaint.      Reversed.

Decided 27 July, rehearing denied 5 October, 1903.