## Flanders, et al. v. Board Trustees Little Rock Graded School.

(Decided June 7, 1916.)

### Appeal from Bourbon Circuit Court.

1. Schools and School Districts—Indebtedness in Excess of Income.— Section 157, of the Constitution, makes void any indebtedness incurred by the board of trustees of a graded school district, in any year, which is in excess of the income and revenue provided for such year, without the assent of two-thirds of· the voters of such district.

2. Schools and School Districts—District Indebtedness.—It is an abuse of discretion for the trustees ·of a graded school district to expend the revenues of a district in the payment of demands

which the district does not legally owe and is not obligated to pay.

3. Schools and School Districts—Application of Levy Voted.—Under section 4464, Kentucky Statutes, the county court can not, by its order, designate the particular use to which any part of the tax levy voted by the district upon its establishment shall be applied, as its appropriation is vested in the trustees, for such lawful purposes as are provided by the statute.

4. Schools and School Districts—Indebtedness—What Part Void.— Only the excess of indebtedness attempted to be created by the board of trustees of a graded school district, over and above the income and revenue for the year, is void.

JOHN J. WILLIAMS and JOHN A. JUDY for appellants.

TALBOTT & WHITLEY for appellee.

OPINION OF THE COURT BY JUDGE HURT.—Affirming in part and reversing in part.

In the year 1910, a petition was presented and filed in the Bourbon county court, by the requisite number of tax payers, requesting that an election be held in a designated boundary for the establishment and maintenance· of a graded school in the boundary, and the election of trustees therefor, in accordance with Article X., Sec. 4464, Kentucky Statutes, and the sections following, of the article named. The county court fixed the boundary of the proposed district, and made the orders required for holding the necessary election. In the order of the county court submitting to the voters the proposition to establish the district, the taxes proposed to be levied were a poll tax of one dollar and fifty cents upon each white male inhabitant, over twenty-one years of age, who resided in the district, and an *ad valorem* tax of thirty-five cents upon each one hundred dollars' worth of property owned by white persons or corporations in the district assessed for taxation. The order of the county court provided, that twenty-five cents of the *ad valorem* tax upon each one hundred dollars' worth of the assessed taxable property was to be applied to the maintenance of the school and the remaining ten cents was to be applied to the purchase, erecting or repairing suitable buildings, if necessary, for the conduct of the school. The district was duly established, a board of trustees elected and installed in office, and a school opened and maintained since that time. The value of the property taxable for the purposes of the school is

not definitely stated in the record, but is given as being in round numbers about $600,000.00. In the year, 1913, the trustees became of the opinion that it was necessary for the successful conduct of the school that an additional building should be erected upon the grounds owned by the district, and a new furnace installed in one of the buildings then in use. For the purpose of securing the money necessary for these purposes, as well as to pay off certain existing indebtedness, the trustees sought authority from the voters of the district to incur the indebtedness and to issue and sell the bonds of the district to raise the necessary sum. For this purpose an election was ordered and held, but at the election the proposition failed to receive the approval of the necessary two-thirds of the voters, who voted at the election. Thereafter, on the 16th day of July, 1913, the board of trustees entered into a contract with one George Erion, by which he undertook to erect an additional building and porch, upon the grounds of the district, for the use of the school and for which the trustees agreed to pay him the sum of $2,800.00. On September 23rd, 1913, the trustees entered into a contract with the Peck-Williamson Heating & Ventilating Co. for the installation of a new furnace in one of the buildings owned by the district, and for which they agreed to pay it the sum of $945.00. Other debts were contracted for improvements, making the aggregate debts the sum of $3,846.00. The contracts mentioned were all made by the board of trustees of the district, as appears from the contracts with Erion and Peck-Williamson Heating & Ventilating Co., which are on file. However, the members of the board of trustees when these debts to Erion and the Heating & Ventilating Co. became due, as individuals, secured the money by executing their notes, as individuals, to the North Middletown Bank for $3,000.00, and to a Mrs. Thomasson for $800.00, and with these funds paid off the debts. They did not execute any obligation of the district for the money. Thus matters stood, when on November 13th, 1913, the appellants, who were tax payers of the district, instituted this action against the trustees, in which they alleged that the trustees during the year, 1913, had contracted debts against the district for a sum largely in excess of the income and revenue provided for that year, and hence the debts were void under the provisions of section 157, of the constitution, and prayed that the trustees be enjoined from paying any

part of the revenue of the year, 1913, or for any year thereafter, upon the debts. It appears that the entire income and revenue of the district for the year 1913 only amounted to the sum of $2,389.12, and $587,25, from the state, which can be used only for maintaining the school, and after paying out of it the necessary obligations for the running expenses of the school, consisting of teachers' salaries, etc., and interest on debts contracted before 1913, there was left for the purpose of liquidating indebtedness the sum of less than two hundred dollars. Thus, it appears that the creation of these debts or either of them was in direct contravention of section 157, of the constitution, the language of which applicable to the matter under consideration is as follows:

"No county, city, town, taxing district or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforcible by the person with whom made; nor shall such municipality ever be authorized to assume the same."

It has been repeatedly held that the inhibition in the section of the constitution, supra, against the creation or assumption of debts applies to school districts. Com. v. L. & N. R. R. Co., 105 Ky. 206; and others. In the application of the constitutional inhibition to taxing districts and municipalities of every kind, it has uniformly been held, that the municipality can, in no event, incur or assume an indebtedness in excess of the revenues for that year, without the assent of two-thirds of the voters, voting at an election held for that purpose and an attempt to do so is void and without effect. Overall v. City of Madisonville, 125 Ky. 654; Harper v. City of Catlettsburg, 31 R. 293; Town of Bardwell v. Harlin, 118 Ky. 232; Brown v. Board of Education, 108 Ky. 783; Perry v. Brown, 21 R. 344, and others. The appellees concede that they were without authority to create the debts as an obligation against the district; that the individuals to whom the debts were owing could not have, in any event, coerced their collection from the district; and in fact they contend that they in contracting the indebtedness did not undertake to create a debt against the district, and the re-

imbursement by the district to them for the sums spent for the district, is entirely a voluntary matter with the district. They, however, insist that the improvements for which the debts were contracted being useful and necessary, that the construction of the improvements was a matter within their discretion, as the governing authority of the district, and that from year to year they were authorized to expend the surplus revenues of the district in recouping themselves for the expenditures and that it was their purpose so to do. The improvements were made upon the property of the district. The act of the trustees as individuals in paying off the contract prices to the persons with whom they incurred the obligation for the district would put them in no better attitude to demand or receive payment for the improvements than the contractors who made the improvements, and they confessedly could not coerce the payment of the obligations from the district. The trustees as individuals, as the assignees of the contractors, who made the improvements, probably have a remedy to recoup their losses by reason of the payment of these obligations but that question is not here for decision. The question here presented is: Has the board of trustees authority to expend the revenues of the district in satisfying demands which the district does not legally owe and can not be made to pay, and which the district is forbidden by positive law either to pay or assume? It seems that there can be but one answer to this question, and that must be a negative one. While the trustees are authorized to do such things as are lawful in the conduct of the school and its management and providing necessary buildings and repairs, and their discretion in such matters will not be interfered with, it would be an abuse of such discretion to use the revenues in paying demands which the district is not obligated for and is forbidden to assume. In this case, it would be permitting them to do indirectly what they are forbidden to do directly. This is not a state of case where a municipality, in preparation for a work, incurs obligations, each year, for one or more years in securing the necessary materials, but within its income for the year and thus does not incur the constitutional inhibition. In the case at bar, the whole debt is created and the entire obligation assumed at one time. Where a debt is created by a municipality without the assent of two-thirds of the voters, it is void, as being in violation of section

157, of the constitution, *supra,* if the entire amount of the debt is greater than the income and revenues for that year, although the contract under which it is created provides for its payment by installments, one a year, for a number of years and the installment to be paid in any one year is not in excess of the revenues for that year. City v. Kenna, 99 Ky. 508; Beard v. City, 95 Ky. 239; Knipper v. City, 108 Ky. 187.

The debts complained of in this action seem to have been for a laudable purpose and the making of the improvements were matters within the discretion of the trustees, if they had not overstepped the boundaries of their authority in creating debts in excess of the constitutional limit, but it is only the excess of the debts above the revenues and income which is void, and it appears that there was a surplus of the income and revenue for the year, after the necessary expenses of maintaining the school and interest on prior debts had been paid, and to such an extent the debts were not void. Troutman v. Hays, 101 S. W. 976; Bardwell v. Hardin, 80 S. W. 770; Carroll v. Madisonville, 125 Ky. 696.

Further, it is contended by appellants, that because the county court, in the order made by it providing for the establishment of the district, divided the taxes to be levied and assigned twenty-five cents upon the one hundred dollars of the value of the property assessed for taxation, for the maintenance of the school, and ten cents of the thirty-five cents authorized, for the purchasing, erecting and maintenance of the buildings, that the income and revenues, which could be applied to erecting and repairing buildings, was limited to the sum which could be realized from the ten cent rate, and that no more of the taxes could be used for such purpose. In this view, we can not concur. The statute provides that the taxes authorized to be levied and collected may be used by the trustees for the maintenance of the school and to purchase or repair or erect the necessary buildings in which to conduct it. Section 4464, Kentucky Statutes. The county court was without authority to divide the revenues arising from the authorized levy and to designate a portion of them to any specific purpose. Such a provision obstructs the proper exercise of the discretion of the trustees. Hence, the trustees are authorized to use any part of the revenue arising from the entire tax rate for either maintaining the school or providing buildings, which is within a sound

discretion.  The trustees as assignees of the persons, who held the debts for the improvements made, were authorized to retain the surplus of the income and revenue for the year beginning June 30, 1913, and ending June 30, 1914, which was left after the payment of the necessary expenses of maintaining the school for that year and the interest on prior debts to be paid out of the revenues for the year as a payment upon the debts, created by the contract with Erion and Peck-Williams Heating & Ventilating Co. and the judgment to the extent that it dissolved the restraining order and permitted the trustees to retain such surplus revenue for that year is affirmed, but the court should have made perpetual the injunction restraining the payment of the revenues for any subsequent years upon the said debts, and to such extent the judgment is reversed.

The cause is remanded for proceedings consistent with this opinion.