Argued October 20, decided October 27, 1908.

## CITY OF EUGENE *v.* WILLAMETTE VALLEY CO.

[97 Pac. 817.]

MUNICIPAL CORPORATIONS — CHARTERS—AMENDMENTS—CONSTITUTIONAL
     PROVISIONS.

1. Constitution of Oregon, Art. XI, § 2, as amended June 4, 1906, providing that the legislative assembly shall not enact, amend, or repeal any charter of any city or town, and granting to the legal voters of every city and town power to enact and amend their municipal charter, etc., deprives the legislature of the power specified, which is reserved to and may be exercised by the legal voters of a city or town; and as the legislature could, prior to the adoption of the provision, have changed a municipal charter without impairing vested rights, the qualified voters of every town and city possess the same power.

MUNICIPAL CORPORATIONS — BONDS — CHARTER  PROVISIONS — AMEND-
     MENTS—RE-ENACTMENT.

2. Eugene City Charter (Sp. Laws 1905, p. 274) § 108, authorized the issue of interest-bearing securities of the par value of $50,000 of sewer bonds, $100,000 of waterworks bonds, etc.  An amendment of the section authorized the issuance of $50,000 of sewer bonds and $300,000 of waterworks bonds, and declared that the authorization of $50,000 of sewer bonds included $27,000 par value of such bonds outstanding.  *Held* that, as the municipal indebtedness as to sewer bonds was not affected by the amendment, as to that, the amendment was but a re-enactment of the charter provision.

MUNICIPAL CORPORATIONS — CHARTERS — AMENDMENTS—SUBMISSION TO
     VOTERS.

3. Eugene City Charter (Sp. Laws 1905, p. 274) § 108, authorized the issuance of interest-bearing securities of $50,000 of sewer bonds, $100,000 of waterworks bonds, $100,000 of electric light bonds, and $75,000 of gaslight bonds. A proposed amendment eliminated electric and gaslight bonds, and increased the amount of water bonds authorized to $300,000. Section 112 (page 275), as originally enacted, empowered the council to collect a special tax to pay interest on the

securities authorized and to provide a sinking fund to pay the principal. A proposed amendment made no substantial change in the manner prescribed for the payment of the interest accruing and of the principal of sewer bonds. and provided generally that from the income derived from the water plant disbursements should be made for the expenses incurred in operation and repairs, payment of interest and improvements, and a sinking fund. *Held,* that the submission to the voters of the proposed amendments to the sections as one proposition was proper, though two or more separate propositions cannot be united when referred to the electors of a municipality for approval or rejection.

MUNICIPAL CORPORATIONS — BONDS — PROVISIONS FOR PAYMENT —"GENERAL."

4. Eugene City Charter (Sp. Laws 1905, p. 275) § 112, as amended, declares that water bonds, in addition to being a "general" obligation of the city, shall be a first and exclusive lien on the water plant, so as to be secured with money derived from the sale of the water bonds, and provides for the payment of the water bonds at maturity and of the interest out of a special fund. *Held,* that the word "general," employed to qualify the word "obligation," meant a municipal debt for the payment of which provision must be made by devoting funds raised by taxation, and the entire section, construed together, provided for a special fund for the payment of water bonds and interest, and provided that a shortage in the funds provided for must be paid out of the general fund.

From Lane: LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by the City of Eugene, a municipal corporation, against the Willamette Valley Co., a private corporation, to enforce the specific performance of a contract to convey real property.

The complaint states generally that the charter of the City of Eugene, filed in the office of the Secretary of State, February 18, 1905 (Sp. Laws Or. 1905, p. 243), empowers the common council to construct or purchase, acquire, and operate a complete system of waterworks, with all necessary appliances, and such real property, within or without the city, as may be necessary or convenient therefor (Chapter 10, § 94, p. 270) ; that a proper initiative petition was duly filed, designed to amend Sections 108 and 112 of the charter of Eugene (pages 274, 275) setting forth a copy of the bill, which proposition was duly submitted to the legal voters of that city at a special election held for that purpose, April 18, 1908, and which measure was carried by a majority of all votes cast thereat, the result thereof being declared by procla-

mation of the mayor; that by Section 108, as amended, the plaintiff was authorized to issue and sell municipal water bonds in a sum not exceeding $300,000, which securities were to bear. interest at a rate not greater than 5 per cent, and not to be sold for less than their face value; that none of the bonds or the money derived from the sale thereof were to be used in buying an existing waterworks, or any part thereof, unless such purchase was first approved by a majority vote of the qualified electors of the city, voting thereon at a general or special election at which the proposition might be submitted; that at all times herein stated the defendant was and is the owner of certain real and personal property, particularly describing the same, which, on March 28, 1908, it proposed in writing to sell to the plaintiff for the sum of $140,000, and also for a stated compensation stipulated to furnish annually the necessary steam or electric power successfully to operate the water plant; that such offer was duly referred to the legal voters of the city at an election held for that purpose April 18, 1908, and the proposition was carried by a majority of all the votes cast thereat; that on May 5, 1908, an ordinance was duly passed authorizing and directing the issuance and sale of water bonds of the city, of the face value of $300,000, for the purpose of purchasing a complete waterworks system for the city, which ordinance provides that such securities should not be sold for less than their face value; that they should bear interest at a rate not exceeding 5 per cent and payable semi-annually, and that the principal should be payable January 1, 1948; that the city recorder duly advertised that sealed bids would be received by the council until July 7, 1908, at the hour of 7.30 p. m. on that day, for the purchase of such bonds, and within the time so specified the defendant filed with the city recorder, its bid to purchase from the plaintiff such bonds of the face value of $140,000; that on July 21, 1908, the plaintiff accepted such bid, and thereupon

awarded to the defendant, bonds of the value and kind specified; that pursuant to such notice a written contract was subscribed by the parties hereto, for the reciprocal sale and purchase of the real and personal property specified, for the consideration of $140,000, which sum was payable in such bonds by delivery thereof within 60 days, upon the receipt of which the defendant was to execute legal conveyances and transfers of such property to the plaintiff and deliver to it the possession thereof; that the form of the bonds agreed upon is as set forth in the complaint; that on August 20, 1908, the defendant notified the plaintiff that the bonds would not be accepted, nor a conveyance or transfer of the property be made to plaintiff, because of the invalidity of the securities, stating wherein they were claimed to be of no legal force; that the plaintiff has fully kept and performed its part of the contract, but the defendant refuses to comply with any of the terms thereof; and that the plaintiff is ready and willing to fulfill all the terms of its agreement with the defendant.

A demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of suit, was overruled, and, the defendant declining further to plead or answer, the relief prayed for was granted; and it appeals.                                          AFFIRMED.

For appellant there was a brief over the names of *Messrs. Woodcock & Potter,* with an oral argument by *Mr. Absalom C. Woodcock.*

For respondent there was a brief and oral arguments by *Mr. John M. Williams* and *Mr. Louis E. Bean.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is argued by defendant's counsel that in attempting to amend Sections 108 and 112 of the city charter (Sp. Laws 1905, pp. 274, 275), two distinct propositions were united, so that voters were deprived of an opportunity to express an opinion as to the merits of the

separate measures and were induced to vote for both, which they might not have done if the questions had been submitted singly. The Organic Law contains the following clause: "The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the State of Oregon": Constitution Oregon, Article XI, § 2, as amended June 4, 1906. It will thus be seen that the legislative assembly has been deprived of the power specified, which is reserved to, and may be exercised by the legal voters of a city or town. As the legislature could, heretofore, have changed a municipal charter or altered any part of it, except that vested rights could not be impaired or destroyed, it would seem necessarily to follow that, under the amended clause of the Organic Act quoted, the qualified voters of every town and city possessed the same measure of power. If the doctrine suggested is not applicable, the enactment or amendment of a municipal charter, by voting for separate sections, might destroy the efficacy of the proposed plan of city government, or very much delay its adoption. But, however this may be, we shall treat the case as if the legal principle asserted was controlling, and that two or more separate propositions cannot be united, when they are referred to the electors of a municipality for approval or rejection: 21 Am. & Eng. Enc. Law (2 ed.) 47. Assuming that any bonds issued pursuant to municipal legislation, secured in the manner thus asserted, are invalid, it would be inequitable to compel the defendant to convey and transfer to the plaintiff the property specified, when any doubt exists in respect to the certainty of the payment of the consideration stipulated to be given therefor.

2. The qualified electors of Eugene being thus authorized to amend the act of incorporation of that city, are

the alterations therein obnoxious to the legal principle thus maintained by the defendant's counsel? In order thoroughly to investigate this subject, the measure committed to the voters, and asserted to have been passed by them, is here set forth in *extenso,* to wit:

"Proposed by Initiative Petition.

For amending Sections 108 and 112 of the city charter of the City of Eugene, by striking out authority to issue $100,000 of electric light bonds, and $75,000 of gaslight bonds, and increasing the issuable water bonds from $100,000 to $300,000; fixing the character and manner of issue of said bonds, and the disposition of water revenues; authorizing condemnation proceedings in building water plant; and providing for water board and fixing its duties.

| Vote· Yes or No. | |
|---|---|
| 300 | Yes. |
| 301 | No. |

(On Official Ballot, No. 300 and 301).

## A Bill

To propose by initiative petition a law to amend Sections 108 and 112 of the charter of the City of Eugene, being chapter 252 of the laws of the State of Oregon for the year 1905, entitled, 'An act to reincorporate the City of Eugene, and to repeal all acts and parts of acts in conflict herewith,' filed in the office of the Secretary of State, February 18, 1905.

*Be it enacted by the People of the State of Oregon:*
*Be it enacted by the People of the City of Eugene:*

Section 1. That Sections 108 and 112 of the charter of the city of Eugene, being chapter 252 of the Laws of the State of Oregon for the year 1905, entitled, 'An act to re-incorporate the City of Eugene and to repeal all acts and parts of acts in conflict herewith,' filed in the office of the Secretary of State, February 18th, 1905, be and the same are hereby amended so as to read as follows:

Sec. 108. For the purpose of securing a complete and adequate water plant for the City of Eugene, and its

inhabitants, including real estate, rights of way and easements in lands, and water rights whether within or without the city limits, necessary for the construction and operation of said system, and for collecting, conducting and distributing said water, and all dams, reservoirs, pipes, conduits, structures and appliances of every kind, reasonable and necessary to said system, the said city is authorized to issue and sell its negotiable bonds to the amount necessary to such purpose, but not exceeding in the aggregate sum of three hundred thousand dollars, and the said common council is hereby authorized to maintain such suits, actions, and proceedings as may be necessary to secure by condemnation or otherwise, the lands, interests in lands, rights of way, easements, and water rights hereinbefore mentioned, and to make payment for the same. The bonds hereby authorized may be in such form, of such denominations, and be due as to principal and interest at such times and places, as the common council may deem most likely to enhance their value and insure their salability. They shall bear a rate of interest not greater than five per cent and shall be sold for not less than their par value. They shall be issued and sold at such times as said common council may direct, but not so as to make the aggregate amount thereof exceed three hundred thousand dollars in par value. All water bonds of said city wherever issued shall be deemed concurrent and shall be without priority as to each other. In addition to being a general obligation of said city, they shall be a first and exclusive lien on all lands, rights of way, easements, water rights, pipe lines, structures and appliances of every kind composing the water system so to be secured with money derived from the sale of said water bonds.

None of said bonds, nor any of the money derived from the sale thereof shall be used in purchasing any existing waterworks or portion thereof, unless the said purchase shall first be approved by a majority vote of the voters of said city voting thereon at a general or special city election at which the proposition of such purchase shall have been submitted.

The common council of such city may also issue and sell like negotiable bonds, to be denominated sewer bonds, to an amount not exceeding in the aggregate fifty thousand dollars, said sum of fifty thousand dollars to include

the sum of twenty-seven thousand dollars par value of such bonds now issued and outstanding. Said sewer bonds shall not be issued or sold until the proposition of their issue, or the part thereof then proposed to be sold, shall have been approved by a majority vote of the voters of the city voting thereon at some general or special city election. If prior to January 1st, 1909, the common council of the city shall not have begun proceedings to secure the water system in this connection mentioned, then and in that event said water bonds shall not be issued or sold until the proposition of their issue, or the portion thereof desired to be issued, shall have been approved by a majority vote of the voters of the city voting upon such proposition at some general or special city election.

Sec. 112. The common council of the City of Eugene shall include in its general annual tax levy a sufficient special levy to meet the interest on all sewer bonds outstanding and to provide a sinking fund sufficient for the payment of the principal thereof at maturity. The money so set aside shall be used for that purpose only and shall be invested as provided in Section 113 of this charter.

The income derived from any water plant owned and operated by the City of Eugene shall be disposed of in the following order and manner:

(1) In the payment of the reasonable costs and expenses of operating said plant, including needed repairs thereon, and collecting its revenues.

(2) In the payment of the interest accruing on the outstanding bonds issued to secure such plant.

(3) In the making of extensions to and improvements upon said plant.

(4) In the accumulation of a sinking fund for the payment of the outstanding bonds issued to secure such plant, the amount so to be set aside yearly to equal $2\frac{1}{2}$ per cent of the then outstanding bonds.

(5) In the payment of the bonds issued to secure such plant.

The income of such plant and the operation, maintenance, extension and improvement thereof, after said plant shall be so far completed as to be ready for operation, shall be in the hands and control of a commission to be known as the Eugene Water Board, which shall be

composed of not less than five freeholders of the City of
Eugene, who shall serve without pay, and whose duties,
term of office and appointment shall be fixed by the com-
mon council of the city by ordinance at or before the
time when said plant is ready for operation.    Said water
board shall have entire control of all water funds and the
disbursement thereof, and shall so keep the same as at
all times to show the true cost of said system, its exten-
sion and yearly operation, the amount of outstanding
water bonds and current bills, and the disposition of the
revenues of said system, and shall make annual reports
to the common council, of the same, and such other re-
ports as may be called for by said common council."

Section 108 of the charter, as originally enacted,
authorized the issuance of municipal securities "with
interest coupons attached thereto, the par value of which
shall not exceed the sum of $50,000 of sewer bonds,
$100,000 of waterworks bonds, $100,000 of electric light
bonds, and $75,000 of gaslight bonds": Sp. Laws Or.
1905, p. 274.    Comparing the items of indebtedness thus
authorized in the original enactment with the power con-
ferred by the amendment, an elimination from the for-
mer clause of the charter of $100,000 of electric light
bonds and $75,000 of gaslight bonds will be observed,
and an increase in the latter enactment, in the issue of
water bonds, from $100,000 to $300,000 will be noted.
A further examination of the original and of the
amended section will disclose that each provided for the
issuance of $50,000 of sewer bonds, the authorization of
which, as indicated in the latter measure, was "to include
the sum of twenty-seven thousand dollars par value of
such bonds now issued and outstanding."    As the muni-
cipal indebtedness authorized, in respect to the issuance
of sewer bonds, was not increased or diminished by the
later grant of power, such law was not an amendment
of the charter, but a re-enactment thereof in this particu-
lar: *Allison* v. *Hatton*, 46 Or. 370, 372 (80 Pac. 101),
*Renshaw* v. *Lane County Court*, 49 Or. 526, 529
(89 Pac. 147).    The sewer bonds will, therefore, be dis-

missed from further consideration, assuming, as we must, that the $27,000 par value of such securities "now issued and outstanding," as specified in the later law, were negotiated pursuant to the original authorization.

3. The only question that was submitted to the legal voters of Eugene by the proposed amendment of Section 108 of the charter was whether or not the municipal indebtedness should be augmented to the extent of $25,000 by striking from the original authorization the grant of $175,000 for electric and gaslight bonds and increasing the issuance of water bonds from $100,000 to $300,000. The right thus to amend that section seems tacitly to be admitted by defendant's counsel; but they insist that, by including in the proposal an alteration of Section 112 of the charter, the submission of the matter to the voters violated the rule of law hereinbefore stated. Section 112 of the charter, as originally enacted, empowered the council, once each year at least, to levy and collect a special tax on all the taxable property within the city, sufficient in amount to pay the interest on the securities thus authorized, and also to provide, at the same time, a sinking fund with which to pay the principal of such bonds at maturity: Sp. Laws Or. 1905, p. 275. An examination of that part of the amended section, relating to the sewer bonds, as hereinbefore quoted, will show that no substantial change is made in the manner prescribed for the payment of the interest accruing thereon and of the principal thereof; and hence the later law is a re-enactment, and not an amendment, in this particular. All reference to the sewer bonds being thus excluded, it will be remembered that the remaining part of Section 112 of the charter, as amended, provides generally that, from the income derived from the water plant, disbursement is to be made of the reasonable expense incurred in operation and repairs, payment of the interest accruing, and of the costs of making extensions to and improvements of the system, and annually to set aside

2½ per cent of such revenue for 40 years as a sinking fund for the payment of the securities at their maturity. The clauses thus remaining are germane to, and might properly have been incorporated in, Section 108 of the charter as amended, which change having authorized the purchase of a waterworks system, if no provision had been made for the payment thereof, would have caused the act to be inoperative. An affirmative vote for Section 108 necessitated a ballot in favor of the adoption of Section 112 as amended.

We believe the conclusion thus reached is founded in reason and fortified by authority. Thus in *State ex rel.* v. *Riplinger,* 30 Wash. 281 (70 Pac. 748), it was ruled that a charter amendment consisting of seven sections, when submitted to a vote of the electors as one proposition, was not invalid under a municipal regulation "that if more than one amendment be submitted at the same general election the same shall be submitted at such election in such manner that each proposed amendment may be voted on separately without prejudice to the others," where it was plainly the intention that the new provisions should be substituted as a whole for the old provisions; all the sections being part of one article devoted to but one special subject. To the same effect is the case of *State ex rel.* v. *Allen,* 178 Mo. 555 (77 S. W. 868).

4. It is contended by defendant's counsel that the amended sections of the charter contain no provisions for the payment, from the general fund of the city, of the interest as it accrues, or for discharging the principal when it matures, and as the entire income to be derived from operating the waterworks may be devoted to the maintenance of the system, and to the making of improvements, the special fund thus set apart for the purpose indicated may be sequestered, thereby rendering the securities, tendered in payment of the property, practically valueless; and hence an error was committed in decreeing a specific performance of the

terms of the written contract and in compelling the defendant to execute conveyances and transfers of the real and personal property involved. It will be remembered that Section 108 of the charter as amended, in referring to the water bonds authorized to be issued, contains the following clause: "In addition to being a general obligation of said city, they shall be a first and exclusive lien on all lands, rights of way, easements, water rights, pipe lines, structures, and appliances of every kind composing the water system so to be secured with money derived from the sale of said water bonds." The word "general" is used in the clause quoted to distinguish it from "special," and, when so applied to qualify the word "obligation," the phrase employed means a municipal debt, for the payment of which provision must be made by devoting funds raised by taxation, thereby appropriating in discharge thereof a *pro rata* share of the burden upon all property in a specified district that is subject thereto. Thus in *Loan Association* v. *Topeka,* 20 Wall. 655 (22 L. Ed. 455), it was ruled that a statute which authorized a town to contract debts or other obligations payable in money implies the duty to levy taxes to pay them, unless some other fund or source of payment is provided. To the same effect see *United States* v. *New Orleans,* 98 U. S. 381 (25 L. Ed. 225.)

An examination of Section 112 of the charter as amended will show that a special fund is provided for the payment of the water bonds at maturity and of the interest as it accrues; but, as such debt is by express words also made a "general obligation" of the city, the two provisions adverted to must be construed in *pari materia.* Interpreting these clauses in such manner, it follows that the residue of the special fund, after the payment of the charges specified, must be applied in the manner indicated; but if there should, at any time, be a shortage in the resources mentioned to meet the payment of the interest on the water bonds as the installments

severally accrue, or insufficient annually to set aside the required amount of money as a sinking fund so provided for, recourse must be had to the general fund to make up the deficiency: *Avery* v. *Job,* 25 Or. 512 (36 Pac. 293); *Eaton* v. *Mimnaugh,* 43 Or. 465 (73 Pac. 754.)

The water bonds being valid obligations against the taxable property of the City of Eugene, and the payment of the indebtedness thus created being properly provided for, no error was committed in overruling the demurrer, or in granting the relief prayed for in the complaint; and hence the decree is affirmed.        AFFIRMED.