Argued May 23, decided May 28, 1913.

## STATE EX REL. *v.* PORTLAND.

(133 Pac. 62.)

</div>

**Municipal Corporations—Ballots—Nominees for Offices—Change in Charter.**

1. The law adopting a "commission charter" for a city being
effective at the time for preparing ballots for an election, names of
candidates nominated in accordance with its provisions should be
placed thereon, even if the petition for such nominations on file and
ready to be acted on were signed before the law went into effect.

[As to right of municipality to adopt commission form of gov-
ernment, see note in Ann. Cas. 1912C, 999.]

**Elections—Charter Provision—Ballots—Political Parties.**

2. The provision of the "commission charter" of Portland prohibit-
ing the designation on ballots of the political party or affiliation of
candidates is not open to the objection of prohibiting political parties
or interfering with their councils.

[As to ballots and distinguishing marks that invalidate them,
see note in 49 Am. St. Rep. 240.]

**Municipal Corporations—Charter Provisions—Nominations for Office.**

3. No rights of political parties are invaded by the provision of
the "commission charter" of Portland that on adoption of such charter
all nominations for offices made under the prior charter shall become
void.

Municipal Corporations—Amendments of Charter—Submission to Vote.

4.  Under Article XI, Section 2, of the Constitution, as amended June 4, 1906, empowering the voters of a city to enact and amend their municipal charter, each section need not be submitted for a separate vote; but amendments amounting to a general revision, the principal object being to provide for a commission form of government, and all being germane thereto, may be voted on as a whole.

[As to binding force of charter amendments not yet submitted for acceptance, see note in 53 Am. Dec. 470.]

Municipal Corporations—Amendments of Charter—Repeal.

5.  The power given by Article XI, Section 2, of the Constitution, as amended June 4, 1906, to the voters of a city to amend their municipal charter includes the power to repeal or strike out provisions.

Municipal Corporations—Elections—Second and Third Choice—Charter Provision.

6.  A city's charter enacted by its voters under the power given by Article XI, Section 2, of the Constitution, is a law within Article II, Section 16, as amended June 1, 1908, authorizing provision by law for the voter's expression of his first, second, or additional choices among candidates for any office.

Municipal Corporations—Legislation by Voters.

7.  Municipal elections and the choice of municipal officers are matters of purely municipal concern, as to which the people of a city have power, under Article IV, Section 1a, as amended June 4, 1906, to legislate.

Municipal Corporations—Charters—Power to Repeal—Delegation.

8.  The voters of a city by retaining as ordinances, subject to repeal by the commission council, provisions of a charter which they, in amending it, have repealed, do not delegate their power to repeal such provisions as parts of the charter, they having already exercised it.

Municipal Corporations—Charters—Revision by Voters.

9.  A revision of a city charter which previously the legislature could have enacted may be enacted by the voters of the city under the power given them by Article XI, Section 2, of the Constitution, as amended June 4, 1906, to enact and amend their charter.

## Statement by MR. CHIEF JUSTICE MCBRIDE.

This is an original proceeding in *mandamus* by Abigail Scott Duniway and others against the City of Portland to test the validity of the recent revision of the city charter of Portland, substituting a commission form of government for the present government by

mayor, city council, etc., the present charter being similar to the usual municipal charter. The revised charter, adopted by initiative vote on May 3, 1913, vests all the legislative, executive, and other powers of the city in a mayor and four commissioners, who collectively constitute a city council. There are no other elective officers except a city auditor. All boards and commissions heretofore existing are abolished, and their powers and duties transferred to the council. The executive and administrative duties are distributed among the four commissioners and the mayor as follows:

(1) A department of public affairs.

(2) A department of finance.

(3) A department of public safety.

(4) A department of public utilities.

(5) A department of public improvements.

The distribution of the work among these departments is to be made by order of the mayor, who may from time to time change these at his discretion. The council is authorized and directed, as soon as possible after their election, to pass a complete code providing for the administration of the powers and duties of the different departments. It is also authorized to prescribe the powers and duties of the officers and employees and to assign one or more officers to particular departments. None of the duties or powers of these departments are specified in the revised charter, except as above stated. The revision also prescribes a preferential system of voting which is as follows:

"Sec. 46. Ballots, Preparation and Form. The auditor shall cause ballots for general and special elections to be prepared, printed, and authenticated. The ballots shall contain complete list of the offices to be filled and the names of the candidates nominated therefor. When the number of candidates is more than three times the number of offices to be filled, each voter

shall have the right to vote for as many first choice candidates as there are offices to be filled, and as many second choice candidates as there are offices. to be filled, and as many third choice candidates as there are offices to be filled. The form of the ballot shall be substantially as follows: General (or special) municipal election, city of Portland (inserting date thereof). Instructions: To vote for any person mark a cross (X) in a square to the right of the name. Vote *first choice for* (here insert number of offices to be filled). Vote *second choice for* (here insert number of offices to be filled). Vote for *third choice for* (here insert number of offices to be filled). *Vote your first choices in the first column. Vote your second choices in the second column. Vote your third choices in the third column. Do not vote more than one choice for any one candidate.* All distinguishing marks make the ballot void. If you wrongly mark, tear or deface the ballot, return it and obtain another from the election officers (here state officers to be elected as mayor and two commissioners, or auditor and two commissioners). If any voter shall vote more than one choice for any one candidate the vote highest in grade shall be counted and others rejected.

| Mayor | First Choice | Second Choice | Third Choice |
|---|---|---|---|
| Names of Candidates | | | |
| Auditor | First Choice | Second Choice | Third Choice |
| Names of Candidates | | | |
| Commissioners | First Choice | Second Choice | Third Choice |
| Names of Candidates | | | |

(Charter amendments, ordinances, or other referendum matters to be voted upon to appear here.)

"When the number of candidates is more than twice. the number of offices to be filled, and not more than

three times the number of offices to be filled, the ballot shall give the first and second choice columns only; and in such case the voter shall have no third choice; and the instructions on the ballot shall be modified accordingly. When the number of candidates is not more than twice the number of offices to be filled only one column for marking shall appear; and in such case the voter shall have no second choice; and the instructions on the ballot shall be modified accordingly.''

The title of the referred act is as follows:

''To amend an act of the legislative assembly of the State of Oregon entitled, 'An. act to incorporate the City of Portland, Multnomah County, State of Oregon, and to provide a charter therefor, and to repeal all acts or parts of acts in conflict therewith,' filed in the office of the Secretary of State, January 23, 1903, amended by the legislative assembly of the State of Oregon in 1905 and subsequently amended by the people of the City of Portland, providing for a commission form of government.''

The ballot title is as follows:

''An act to amend and generally revise the city charter by providing a commission form of government vesting all legislative power in a council consisting of a mayor and four commissioners, distributing the executive business among five departments, the mayor or a commissioner being at the head of each department, abolishing ward representation, providing that the mayor, commissioners and auditor shall be elected, all other officers to be appointed. Shall the present charter of the City of Portland be amended by providing for a commission form of government? 100    Yes.
101    No.''

The revision also contains the following clause:

''This charter shall go into effect on the first day of July, 1913, except that the provisions hereof for elec-

tion shall be in effect immediately upon its adoption and the election shall be held pursuant to such provisions on the first Monday in June, 1913. All nominations made under the charter of 1903 shall become void and of no effect on the adoption of this charter.''

The revision was submitted to the voters upon May 3, 1913, upon the same date and coincidently with the direct primary election held for the nomination of city officers under the provisions of the original charter. At the time of said election there were 73,259 registered voters in the City of Portland. The highest vote cast upon any office to be filled was 45,904. The total vote cast upon the amended charter was 34,342; 17,317 voting for the adoption of the measure, and 17,027 voting against its adoption. At the time the petition for a writ of *mandamus* was filed herein the returns of the election had not been canvassed, but it appears from defendant's answer to the writ that on May 19, 1913, the votes were canvassed, and that the mayor certified the result, and made proclamation of the adoption of the amendments, as required by law.

It was claimed by the relators that the amendments had not been legally adopted, and that, the old charter being still in force, it was the duty of the city auditor to place upon the ballots to be voted at the city election the names of the candidates who had been chosen at the direct primary election for the various city offices, and to omit from such ballots the names of candidates for mayor and commissioners nominated under the revised charter. The auditor, taking the reverse view of the matter, indicated his intention of placing upon the ballot the names of the candidates for mayor and commissioners selected under the provisions of the amended charter, and to omit therefrom the names of those candidates selected at the direct primary. Whereupon the relators sued out in this

court an alternative writ of *mandamus* to compel the auditor to prepare the ballots in accordance with the provisions of the old charter. Other matters connected with the case appear in the opinion.

WRIT DISMISSED.

For petitioners there was a brief and an oral argument by *Mr. Ralph R. Duniway*.

For defendants there was a brief over the names of *Mr. Frank S. Grant,* City Attorney, *Mr. Richard W. Montague* and *Mr. P. L. Willis,* with oral arguments by *Mr. Grant* and *Mr. Montague*.

Opinion by MR. CHIEF JUSTICE McBRIDE.

It is to be regretted that the short time intervening between the hearing of this case and the Portland City election precludes an extended discussion of the important points raised in the briefs of counsel.

The principal contention of counsel for relators is that the amendments voted on May 3, 1913, and which for convenience we shall designate as the "commission charter," are now in effect, so that no nominations can be made under the commission charter for the city officers provided for therein. By Section 1a, Article IV, of the Constitution, as amended June 4, 1906, full powers of initiative are reserved to the people of all municipalities as to all local, special, and municipal legislation of any character. It was provided that the manner of exercising such powers should be prescribed by general laws, except that cities and towns might prescribe the manner of such exercise as to their municipal legislation. By Section 2, Article XI, of the Constitution, as amended June 4, 1906, the legal voters of cities were given power to enact and amend their municipal charters subject only to the Constitution and to the criminal laws of the state. The subsequent

amendment to this section, adopted November 8, 1910, makes no change as to the matters here considered. By the provisions of Section 12 of ordinance No. 16,311, approved March 26, 1907, it is provided that the votes on measures and charter amendments shall be counted, canvassed, and returned by the election boards, and that it shall be the duty of the auditor to canvass the votes given for each measure or amendment. The mayor is required within 30 days from the time of the election to proclaim the adoption of each measure or amendment which shall have received the affirmative majority of the total number of votes cast thereon, and thereafter such measure or amendment shall become and be in full force and effect. In these two constitutional provisions and in the ordinance referred to we have complete machinery for submitting charter amendments and declaring the result of the vote thereon, and these seem to have been complied with in every particular. In Section 1 of Article IV of the Constitution, as amended June 2, 1902, it is provided: "Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise."

1. It may well be doubted whether it was in the power of the council of Portland to prescribe by ordinance the time when a measure referred to the people should become effective, but in our view of the case this matter is unimportant as applied to the case at bar. The act is now effective in any view of the law, and the petitions for nomination are now on file and ready to be acted upon, and whether they were signed before or after the law went into effect is a matter of no moment.

2, 3. It is claimed that the proposed commission charter is void because it prohibits the designation of the political party or the affiliation of the candidates

upon the ballot.   This it is said is in effect a prohibi-
tion of political parties, and allows members of one
political party to control or defeat the nominations of
another political party.    It is no doubt true that the
people have an inalienable right to assemble them-
selves into political parties, and that conventions and
assemblies of a political party have a right to be pro-
tected from the interference of . members of other
political parties; but the revision in question does not
prohibit political parties nor authorize interference
with their councils. Any party may indorse, support
and work for the election of any candidate of its choice.
The proposed charter assumes that a voter desiring to
vote for a person of his own political faith will take
interest enough to ascertain the name and *status* of
such candidate without having to refer to the ballot
when he comes to the voting booth.   Some voters pre-
fer to vote for candidates of their own religious faith
or belonging to the same secret or benevolent socie-
ties, but that has never been advanced as an argument
for the right to have a candidate designated on the
ballot as a Methodist, a Catholic, a Mason, or an Odd
Fellow.   Religious associations are not destroyed by
the failure to designate the peculiar religious faith of
the candidate upon the ballot, and it would seem that,
as a matter of abstract right, it would have as much
place there as a designation of the candidate's political
faith; nor were the rights of any political party in-
vaded by the proposed change in the charter whereby
the primary nominations were rendered nugatory.

4. It is also claimed that the proposed revision is
illegal and void because it submits a mass of amend-
ments, having no relation to each other, to be voted
upon in one vote, whereas they should have been sub-
mitted separately so that a vote could be taken upon
each separate section or amendment.   The authorities

cited to sustain this proposition are: 21 Am. & Eng. Ency. of Law (2 ed.) 47; 28 Cyc. 1548, 1549; *City of Eugene* v. *Willamette Valley Co.,* 52 Or. 490 (97 Pac. 817); *Denver* v. *Hayes,* 28 Colo. 110 (63 Pac. 311). The subject under discussion in all these citations is concerning the proposition of the issuance of municipal bonds or creating municipal indebtedness, and each case cited turns upon some statutory or constitutional provision not found in this state. The premise assumed by relators in the case at bar is that a mass of amendments having no relation to each other are submitted for a single vote. An examination of the amendments, and of the charter as it would read as amended, shows the premise is incorrect. The principal object of the revision is to provide for a commission form of city government. To do this it was deemed necessary, and in fact was necessary, to so revise the charter as to adapt its provisions to the conditions involved by the change. It would not suffice to submit an amendment declaring that Portland should have a commission form of government consisting of a mayor and four commissioners without wiping out those provisions of the charter which divided the city into wards and provided for the election of a councilman in each ward or that portion which provided for an executive board, and the other boards, officers and commissions theretofore existing. It was wholly proper that in a general way the powers, authority, duties, and jurisdiction of the commission should be outlined; and, if any criticism is to be indulged in, it should be that the outline is not drawn as clearly as it should have been. The amendments amount to a general revision of the city charter, and are all germane to the general purpose sought to be accomplished. The following remarks of Mr. Justice MOORE, in the case of *City of Eugene* v. *Willamette*

*Valley Co.,* 52 Or. 490 (97 Pac. 817), are applicable here: "As the legislature could, heretofore, have changed a municipal charter or altered any part of it, except that vested rights could not be impaired or destroyed, it would seem necessarily to follow that, under the amended clause of the organic act quoted (referring to Article XI, Section 2, of the Constitution, as amended June 4, 1906), the qualified voters of every town and city possessed the same measure of power. If the doctrine suggested is not applicable, the enactment or amendment of a municipal charter, by voting for separate sections, might destroy the efficacy of the proposed plan of city government, or very much delay its adoption." Without committing ourselves to the unqualified declaration that every amendment and part thereof is absolutely valid and unassailable, we content ourselves with saying that, taken as a whole, we discover no such omissions or discrepancies as would justify us in holding that the revision is void.

5. Another contention is that there is no authority under our laws for a municipal corporation to repeal any portion of its charter. This, if true, would be a unique condition. It is settled that since the constitutional amendment last cited the legislature cannot repeal or amend a municipal charter, and, if the municipality cannot do it, then it sits clothed in a suit of steel armor, riveted and bolted so securely that only by an appeal to the people of the whole state can the burden be removed. Happily, our municipal corporations labor under no such disability. The section of the Constitution last referred to provides: "The legal voters of every city and town are hereby granted power to enact and amend their municipal charter," etc. Now, an amendment to a charter necessarily implies a change in a charter, and a change suggests a

repeal of some part of that which is to be amended. "The term 'amendment' implies such an addition or change within the lines of the original instrument. as will effect an improvement, or better carry out the purposes for which it was framed": *Livermore* v. *Waite,* 102 Cal. 113 (36 Pac. 424; 25 L. R. A. 312); *State* v. *Wright,* 14 Or. 367 (12 Pac. 708); *Falconer* v. *Robinson,* 46 Ala. 340. A new bill may be ingrafted by way of amendment on the words "Be it enacted," etc.: *De Hay* v. *Berkeley County Commrs.,* 66 S. C. 229 (44 S. E. 790). We conclude, therefore, that a charter may be amended by repealing objectionable provisions with or without inserting other provisions in their places. It is true that in *McKeon* v. *Portland,* 61 Or. 385 (122 Pac. 291), we held that a municipal corporation could not commit suicide by wholly repealing its charter and going out of existence as a municipality, but that is not this case. Here the municipality continues to exist; its charter is merely amended by striking out certain provisions thought to be inapplicable to changed conditions or improved methods of city government and inserting others deemed to be applicable thereto.

6, 7. The preferential system of voting provided for in the revision is attacked as being a violation of the Constitution. Section 16, Article II, of the Constitution, as amended June 1, 1908, among other things, provides: "Provisions may be made by law for the voter's direct or indirect expression of his first, second or additional choices among the candidates for any office." Now, a city charter enacted by the voters of the municipality is as much a law as if it were enacted by the legislature. A provision, therefore, made in such charter for the expression by the voter of his first, second or third choices among the candidates for any office is a "provision made by law" for that purpose,

and within the Constitution. We have frequently
held, and again hold, that within its boundaries and
upon subjects relating purely to its municipal affairs
a municipal corporation has the same power to legis-
late as the legislature had before the passage of the
amendment. Municipal elections and the choice of
municipal officers are matters of purely municipal con-
cern; and, as to these, the people of the city have ample
power to legislate, subject only to the restrictions here-
tofore noted.

8. It is objected that certain sections of the charter
are repealed as charter provisions, but retained as ordi-
nances, subject only to repeal by the commission coun-
cil; and it is contended that this is a delegation of
power to the council to repeal these provisions of the
charter and unlawful for the reason that, if the right
to repeal portions of the charter is granted, such right
must be exercised by the people and cannot be dele-
gated to the council. The effect of the clause in the
revision objected to is to repeal the provisions as parts
of the chapter and to re-enact them as ordinances.
The people have already repealed them so far as they
stood as charter provisions, but have re-enacted them
as ordinances. There is no delegation of power here.

Other objections are urged, but in our judgment they
go merely to the policy of the proposed revision, and
not to the authority to enact it.

9. We think the true test is this: Could the legis-
lature before it was deprived of the power to enact
or amend charters have enacted this revision? We are
of the opinion that it could have done so, and that the
courts would have held it valid. If the legislature
could lawfully have done this before the amendment,
the people of the City of Portland can do the same
within its corporate limits since the amendment. It
must be confessed that the change is a tremendous

one, and the centralization of all the powers of the city in the hands of five men is an experiment in which mistakes in the selection of the persons who are to wield this enormous grant of power might be fraught with serious consequences. But these are matters with which we have nothing to do; they were left to the decision of the voters of the city at the polls, and by a small majority they have decided to try the experiment. As to the 54 per cent of the voters who did not take interest enough in this important matter to cast a vote either way, the only conclusion must be that they do not care how they are governed and are mere ciphers to be put in a column by themselves. This court cannot legislate a government for the City of Portland. It can only declare the judicial results of the election, and express the hope that the new experiment may prove a successful one.

WRIT DISMISSED.