Allen, J.
The plaintiff in error challenges the amendment enacted in the election of November, 1921, as a part of the home-rnle charter of the city of Cleveland, on two grounds:
1. That the amendment was adopted in violation of the terms of the Ohio constitution.
2. That the proportional representation provision of the amendment is invalid because it violates Section 1, Article Y, of the Ohio Constitution; that this provision is inseparable from the rest of the amendment, and therefore the amendment as a whole falls to the ground.
Taking these alleged grounds of error in their order, we shall proceed to examine whether the amendment conforms to the provisions of the Ohio constitution in the manner of its adoption.
Three objections are urged to the method of submitting the amendment. The first is that the amendment is not merely a change in the form and substance of the original charter, but that it abrogates all of the original charter, completely discarding the structure and the organization of the present city government and setting up an entirely new and distinct charter in its stead. The second objection is that complete copies of the amendment were not placed upon the ballot at the election at which the amendment was adopted. The third objection is that the amendment contains many distinct sections, which were submitted, not separately, section by section, but as a whole.
The first objection involves two questions:
(a) Does the amendment adopted in 1921 constitute a new charter rather than an amendment?
*127 (b) If so, does this fact invalidate the method of the proposal’s submission, requiring that it be submitted in conformity with Section -8, Article XVIII of the Ohio Constitution, instead of in conformity with Section 9 of the same article, under which it was submitted?
An examination of the new amendment, in order to determine whether it constitutes, as is claimed, a completely new charter, discloses that this contention cannot be sustained upon the facts. While it is true that all but two sections of the old charter were repealed, for the purpose no doubt of submitting the proposition as a whole, the amendment submitted retained verbatim sixty sections of the original charter, only the section numbers being changed. The amendment repeated one hundred and five sections with only editorial revisions, and changed substantially thirty-five sections of the original • charter. This fact disposes of the contention that the amendment is invalid because it constitutes a new charter instead of an amendment, and that it should have been submitted to vote under the constitutional provision as to charter elections rather than under the constitutional provision as to charter amendments.
Even if this amendment did constitute a new charter, however, shall it be said that the people of a charter city, exercising all powers .of local self-government, have less power than their representatives in the legislature, who are permitted to strike out all but the enacting clause of a law and completely change it by way of amendment?
One of the holdings that amendments which even vitally change the substance of a law are to be con *128 sidered amendments for purposes of submission is to be found in Cantini v. Tillman, 54 Fed. Rep., 969, at page 976, as follows:
“Nothing is more common than to amend by striking out one section and by inserting another, or by striking out several sections and by inserting one or several; and if it be competent to amend by striking out and inserting one, two, three, four sections, clearly it is competent to strike out all the sections and to insert others in pari materia. Striking out all after the enacting words and inserting, is nothing but an amendment, and is governed by the same rules as other amendments.”
Among cases applying this rule to city charters are the following:
‘£ The power given by Article XI, Section 2, of the Constitution, as amended June 4, 1906, to the voters of a city to amend their municipal charter includes the power to repeal or strike out provisions. ’ ’ State, ex rel., v. City of Portland, 65 Ore., 273, syllabus 5.
“Amendments to a special charter of a city of the first class that may be submitted at a special election are not confined to those that are only revisory or supplemental, but include those which alter or annul the basic principle upon which the city government is founded.” State, ex rel. Hindley, v. Superior Court of Spokane County, 70 Wash., 352, syllabus 3.
See also the opinion in Wade v. City of Tacoma, 4 Wash., 85, 87.
Counsel for plaintiff in error argue, however, that although the amendment repeated within its specific terms much of the original charter of the city of Cleveland, since the proposal adopted constitutes an *129 instrument complete within itself it cannot be considered an amendment. It is plain, however, that this instrument, in which only 35 sections of the original charter have been changed, as compared with 105 sections which were editorially revised, and 60 sections which were retained verbatim, would not be a charter complete within itself unless the old measures were included; that is, the retention of the original charter within the present amendment at once gives the amendment its completeness, and makes it, not a new measure, but an amendment.
The majority of the court hold, therefore, that the amendment does not constitute a new charter, and that it was properly submitted to the voters under Section 9, Article XVIII of the Constitution.
Is this amendment invalid in its submission because copies thereof were not placed upon each ballot?
It is conceded that a digest of 86 lines purporting to explain the tenor of the amendment was printed upon the ballot used at the election. Plaintiff in error claims that the printing of this digest upon the ballot was not a sufficient compliance with the constitution in that regard.
The section of the Ohio constitution which covers amendments to home-rule charters, Section 9, Article XVIII, reads:
“Amendments to any charter framed and adopted as herein provided may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and, upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority. The sub *130 mission of proposed amendments to the electors shall be governed by the requirements of section 8 as to the submission of the question of choosing a charter commission; and copies of proposed amendments shall be mailed to the electors as hereinbefore provided for copies of a proposed charter. If any such amendment is approved by a majority of the electors voting thereon, it shall become a part of the charter of the municipality. A copy of said charter or any amendment thereto shall be certified to the secretary of state, within thirty days after adoption by a referendum vote. (Adopted September 3, 1912.)”
This section provides that the submission of proposed amendments to the electors shall be covered by the requirements of Section 8, Article XVIII, as to the submission of the question of choosing charter commissions. Section 8 reads:
“The legislative authority of any city or village may by a two-thirds vote of its members, and upon petition of ten per centum of the electors shall forthwith, provide by ordinance for the submission to the electors, of the question, ‘Shall a commission be chosen to frame a charter?’ The ordinance providing for the submission of such question shall require that it be submitted to the electors at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise it shall provide for the submission of the question at a special election to be called and held within the time aforesaid. The ballot containing such question shall bear no party designation, and provision shall be made thereon for the election from the municipality at large *131 of fifteen electors who shall constitute a commission to frame a charter; provided that a majority of the electors voting on such question shall have voted in the affirmative. Any charter so framed shall be submitted to the electors of the municipality at an election to be held at a time fixed by the charter commission and within one year from the date of its election, provision for which shall be made by the legislative authority of the municipality in so far as not prescribed by general law. Not less than thirty days prior to such election the clerk of the municipality shall mail a copy of the proposed charter to each elector whose name appears upon the poll or registration books of the last regular or general election held therein. If such proposed charier is approved hy a majority of the electors voting thereon, it shall become the charter of such municipality at the time fixed therein. (Adopted September 8, 1912.)”
Neither of these sections of the Ohio constitution specifically provides for placing copies of a proposed charter amendment upon the ballot. Under the terms of plain constitutional construction, therefore, placing a digest of the proposed amendment consisting of 86 lines upon the ballot, if the digest fairly represents the meaning and substance of the amendment proposed, would seem to be a substantial compliance with the constitution. It is admitted in the instant case that each elector had a copy of the 181 sections of the amendment mailed to him prior to the election, and it is not questioned that the digest of the amendment placed upon the ballots fairly represented its tenor.
*132 Counsel for plaintiff in error, however, argue that State, ex rel. Greenlund, v. Fulton, Secy. of State, 99 Ohio St., 168, is conclusive upon-this point. That case holds, in proposition 2 of the syllabus:
“When such a petition, signed and prepared in accordance with the constitutional requirement, has been filed with the secretary of state, he is required to submit to the electors the exact proposal as set forth in the petition, and there is ño authority for the submission of any other or different one.”
In the Greenlund case the supreme court of Ohio holds that in the submission of a state initiative proposal to the voters the exact language of the initiative proposal must be printed on the ballot. The plaintiff in error argues by analogy that the exact language of the proposal involved in the 181 sections of the amendment offered to the charter of Cleveland at the November election, 1921, should have been placed upon the ballot verbatim.
It is self-evident that the placing of such a proposal upon the ballot might seriously complicate election arrangements. It would greatly increase the cost of printing the ballot. The bulk and size of such a proposal, if given verbatim upon the ballot, might necessitate a change in the size of the ballot boxes, at considerable expense to the municipality. Apart from practical objections to this proposition, however, the case quoted construes an entirely different section of the constitution, which relates only to initiative and referendum measures on state constitutional questions, and does not apply to charter elections under the home-rule amendment to the Ohio constitution. A majority of the court therefore hold that the amendment was not invalid in its submis *133 sion, due to the fact that verbatim copies thereof were not placed upon the ballot.
Is this amendment invalid because its various sections were not submitted separately?
Sections 8 and 9 of Article XVIII of the Ohio Constitution neither prohibit nor require such separate submission. Under Article XVIII municipalities were given all powers of local self-government, and the method of holding municipal elections has been held to be a matter peculiarly within these powers. (Fitzgerald et al., Board of Deputy State Supervisors, v. City of Cleveland, 88 Ohio St., 338.) That being the case, surely under our present constitution it is within the power of municipalities to decide whether city charter amendments shall be submitted separately or en bloc. Only in the bloc submission could proposals which are germane to each other be submitted in such a way as to insure their adoption as a whole. Since this method is not prohibited under the constitution, and comes fairly within the powers of local self-government, a majority of the court hold it is valid.
This precise question was raised in the case of State, ex rel., v. City of Portland, 65 Ore., 273, in which an action in mandamus was instituted to test the validity of certain proposals submitted as a whole and adopted, providing for the commission form of government in Portland, Oregon. One of the objections urged to the amendment was that it contained various sections, which should have been submitted separately. The court held that this fact did not invalidate the method of submission. Proposition 4 of the syllabus reads as follows:
*134 “Under Article XI, Section 2, of the Constitution, as amended June 4, 1906, empowering the voters of a city to enact and amend their municipal charter, each section need not be submitted for a separate vote; but amendments amounting to a general revision, the principal object being to provide for a commission form of government, and all being germane thereto, may be voted as a whole.”
Upon page 283 of the opinion, the court says:
“If the doctrine suggested is not applicable, the enactment or amendment of a municipal charter, by voting for separate sections, might destroy the efficacy of the proposed plan of city government, or very much delay its adoption.”
The majority of the court being of the opinion that the method of adopting the amendment in question was valid, it now remains to inquire whether the systern of voting set up in the amendment, known as the Hare System of Proportional Bepresentation, conflicts with the constitution of Ohio.
Plaintiff in error claims that the proportional representation feature of the amendment contravenes Section 1, Article V of the Constitution of Ohio. This section of the constitution reads:
“Every white male citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year next preceding the election, and of the county, township, or ward, in which he resides, such time as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections.”-
By the terms of the amendment here questioned the city of Cleveland is divided into four districts. The old wards are abolished, and the council is to *135 consist of twenty-five members elected from the four districts, each of which is to choose not less than five nor more than nine council members. The districts and the number of councilmen from each are designated, subject to future change by! 'the council. Candidates for council are nominated by petition, no elector being permitted to sign the nominating petition of more than one candidate. The candidates ’ names are printed on the ballot, and the elector then votes by placing the figure ‘1’ opposite the name of his first choice, the figure ‘2’ opposite the name of his second choice, and so on down the list, putting consecutive numerals beside the name of as many candidates as he pleases. The ballot contains these words: “The more choices you express, the surer you are to make your ballot count for one of the candidates you favor.” When the polls close the ballots are counted, all the first choice ballots for the respective candidates being put into separate packages. The whole number of valid ballots is then counted and divided by a number greater by one than the whole number of seats to be filled in the district. The next whole number larger than the existing quotient is called the quota, and any candidate receiving first choice votes equalling or exceeding the quota is declared elected. If a candidate has more such votes than the quota, the surplus is taken at random from among his ballots and distributed among candidates having fewer first choice votes than the quota, according to the expressed second choice. Likewise on each count, the lowest candidate is declared defeated, and his ballots are distributed among the so-called continuing candidates.
*136 Plaintiff in error claims that under this system, an elector residing in a district represented by from five to nine councilman, no matter how many pref erenees he expresses when he casts his ballot, has his ballot counted for but one councilman; that he is permitted to vote for but one candidate.
The court does not consider that this contention is established upon the facts. The ballot is counted every time that it is considered as adding one to or subtracting one from a group of votes. It is true that the vote may become effective in electing only one candidate, and in this sense possibly it may be “counted for only one councilman.”
However, plaintiff in error can hardly contend that a voting system which may at times deprive a ballot of its full effect is necessarily unconstitutional.
That the effect of a vote is often nullified in our elections is axiomatic. It is a matter of cornmon knowledge that national officials have been elected by an actual minority. John Quincy Adams, for instance, received fewer popular votes than Andrew Jackson in the election of 1824. The popular vote for Jackson was 155,872; for Adams 105,321. (Cyclopedia of American Government, Volume III, page 11.) That is to say, votes of a plurality of electors are not always counted so as to be effective in national elections. It is also a matter of common knowledge, that, through the gerry- , mander, districts may be so defined as to be | practically deprived of the effectiveness of their votes in elections; that is, a majority may be so I districted as to become a minority, without power of electing its candidates.
*137 The vote of an elector, therefore, under our present form of state and national government, may be shorn of its effect so far as the actual election of the elector’s candidate is concerned, without invalidating the method of election.
This fact certainly is established, however, that under the Hare system, the voter is permitted to vote only one first choice vote, although at least five, and possibly nine, candidates are to be elected from his district.
The question then narrows itself down to this: Does the fact that the elector under this system votes a first choice for one officer only, there being from five to nine to be elected in the district, violate the provision of Section 1,-Article V of the Constitution, that every elector shall be entitled to vote at all elections ?
On the face meaning of this section the Hare Systern of Proportional Representation does not violate the Ohio constitution, for the elector is not prevented from voting at any election. He is entitled to vote at every municipal election, even though his vote may be effective in the election of fewer than, the full number of candidates, and he has exactly the same voting power and right as every other elector.
The plaintiff in error, however, claims that State, ex rel., v. Constantine, 42 Ohio St., 437, is an authority binding upon this court in his favor. The second and third propositions of the syllabus in the Constantine case are:
“2. Where an office is filled by an election, the election must conform to the requirements of the constitution, and each elector of the district is en *138 titled to vote for a candidate for each office to he filled at the election.
“3. A statute authorizing the election of four members of the police board at the same election, but which denies to an elector the right to vote for more than two members is in conflict with article V of the constitution.”
This case is certainly an authority against the position of the defendant in error. The slight circumstance that limited voting was condemned in the Constantine case, while it is proportional representation that is here attacked, does not greatly differentiate the cases.
State, ex rel., v. Constantine, however, extended the plain language of the constitution far beyond the word-meaning of the provision in Section 1, Article ; V. To the clause, shall “be entitled to vote at all Selections,” the Constantine case added the clause, and “for a candidate for each office to be filled at the election.” Moreover, that case was decided before the home-rule provision of the Ohio constitution was enacted. Since then a whole new body of law has developed in regard to Ohio city government — a body of law giving to cities the widest possible latitude in the formation of their local governments and in the performance of local governmental functions, limited only by provisions of the state constitution.
In 1912 the people of Ohio gave to municipalities all powers of local self-government, Sections 3 and 7, Article XVIII Ohio Constitution. Under these provisions this court has held that a system of preferential voting in a chartered municipality is valid (Fitzgerald v. Cleveland, 88 Ohio St., 338); that the provisions as to civil service in the charter of a *139 city, if they comply with the state constitution, discontinue the general law on the subject as to that municipality (State, ex rel. Lentz et al., Civil Service Commission, v. Edwards, 90 Ohio St., 305); and that women can by home-rule charter be made voters in local affairs, contrary to the provision of Section 1, Article V. (State, ex rel. Taylor, v. French, 96 Ohio St., 172).
To hold valid this system of voting’ adopted by the people of Cleveland is merely to carry out the plain meaning of the constitutional provision that municipalities shall have all powers of local self-government, and to give effect to the power which rightly takes precedence over all statutes and court decisions, the will of the people, as expressd in the organic law.
Electoral provisions similar to these have lately been upheld in other states.
In the case of Commonwealth, ex rel. McCormick, Atty. Genl., v. Reeder, 171 Pa. St., 505, the supreme court of Pennsylvania held constitutional an act providing for the election of a given number of judges, notwithstanding the fact that an elector was not allowed to vote for as many persons as there were places to be filled. See also State v. Monahan, 72 Kans., 492, 115 Am. St. Rep., 224, wherein the supreme court of Kansas upheld a legislative act which provided a property qualification for ■ electors desiring to vote for directors of a drainage district, notwithstanding a constitutional provision against such qualification so far as electors generally were concerned.
Counsel for plaintiff in error cite to the court the case of Wattles, ex rel. Johnson, v. Upjohn, 211 *140 Mich., 514, a recent case, which held that under the home-rule act of Michigan the provisions of the Kalamazoo charter, providing substantially for the use of the Hare System of Proportional Representation, violated the Michigan constitution. The plaintiff in that action, which was a quo warranto proceeding, attacked the proportional representation feature of the charter upon the specific ground that the elector, under the Hare voting system, would be deprived of his right to vote for every office to be filled.
The provisions of the constitution of Michigan applicable to the question of voting are as follows:
“In all elections every male inhabitant * * * [defining the qualifications of voters] shall be an elector entitled to vote.” Also, “No city or village shall have power to abridge the right of elective franchise.”
It is conceded that if the constitution of Ohio were the same as that of Michigan this Upjolm case would be a direct authority against the validity of the proportional representation feature of the Cleveland amendment. But the constitutions of Ohio' and Michigan upon this point are very different. The Ohio document contains a home-rule provision which grants cities all powers, that is, unlimited Í power, of local self-government. The Michigan constitution contains no such broad provision.
Its so-called home-rule section is as follows:
“Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the govern *141 ment of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of the state.” (Section 21, Article VIII.)
This fact then distinguishes the two cases. In: Ohio, charter cities have all powers of local self-government; and in Michigan, their powers of local self- S government are limited.
The Upjohn case} therefore, is not an authority against this holding. Upon the same ground we also distinguish In Re Opinion of Judges, 41 Atl. Rep. (R. I.), 1009. That case arose under a section of the Ehode Island constitution, which specifically provides that ‘‘ each elector shall be entitled to vote in the election of all civil officers,” a wording which necessarily compelled the opinion rendered. Furthermore, the Ehode Island case did not arise under an unlimited grant of power of local self-government. The same distinction also applies in every ease cited by counsel for plaintiff in error as supporting his contention.
Since it is the opinion of a majority of the court that the Hare System of Proportional Eepresentation outlined in the amendment is valid under the unlimited powers of local self-government given to charter cities in the Ohio constitution, it is unnecessary in the instant case to decide whether that feature of the amendment is separable from the sections embodying the rest of the proposal.
After all, is not the purpose of the home-rule amendment to the constitution exactly this, that progress im municipalities shall not be hampered by *142 uniformity of action; that communities acting in local self-government may work ont their own politi-' >cal destiny, and their own political freedom, on their own initiative, and in their own way; and with this purpose in mind, should not the enactment of political alterations in the structure and substance of a charter government be given every possible presumption of validity? There is a presumption that the enacted statute is valid. (County of Miami v. City of Dayton, 92 Ohio St., 215.) Not less should there be a presumption that changes enacted accord-' ing to law in the organic constitution of a home-rule city are valid.
For these and the reasons heretofore given the judgment is affirmed. r.l
Judgment affirmed. s
Marshall, C. J., Wanamaker, Matthias and Day, JJ., concur.